SACKS, RICKETTS & CASE LLP
Cynthia A. Ricketts, SBN 012668
cricketts@srclaw.com
Allison Kierman, SBN 024414
akierman@srclaw.com
Natalya Ter-Grigoryan, SBN 029493
nter-grigoryan@srclaw.com
2800 North Central Avenue, Suite 1230
Phoenix, AZ 85004
Telephone: (602) 385-3370
Facsimile: (602) 385-3371

*Attorneys for Plaintiff Project Vote, Inc.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Project Vote, Inc., | Case No. |
| Plaintiff, | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| v. | |
| Michele Reagan, in her official capacity as Secretary of State, State of Arizona; Helen Purcell, in her official capacity as County Recorder of Maricopa County; F. Ann Rodriguez, in her official capacity as County Recorder of Pima County, | |
| Defendants. | |

## INTRODUCTION

1.      Plaintiff Project Vote, Inc. ("Project Vote") brings this lawsuit under the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. §§ 20501, *et seq.*, and under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution to challenge Arizona's practices of charging excessive, discriminatory, and illegal fees for access to public election records and limiting access to those records.

2.      Project Vote is a national, non-partisan organization whose mission is to build an electorate that accurately represents the diversity of this nation's citizenry and to ensure that every eligible citizen can register, vote, and cast a ballot that counts. To this end, Project Vote partners with other voter registration organizations to conduct and facilitate voter registration drives.

Through records requests and dialogue with election officials, Project Vote works to confirm that applicants in underrepresented constituencies are properly added to, and not improperly removed from, the voter rolls. Access to the public election records that must be made available for public inspection and photocopying under the NVRA is critical to Project Vote's mission.

3.     The NVRA was enacted with the stated purposes of increasing "the number of eligible citizens who register to vote" in federal elections, "enhanc[ing] the participation of eligible citizens as voters," "protect[ing] the integrity of the electoral process," and "ensur[ing] that accurate and current voter registration rolls are maintained." 52 U.S.C. § 20501(b). In service of these goals, the NVRA includes a provision that requires states to make available "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. § 20507(i)(1) (the "Public Disclosure Provision"). The public availability of and access to these registration records ensures that citizens and voter registration organizations have a role in overseeing the voter registration process by bringing the state's election apparatus out from the shadows to guard against capricious, negligent, or discriminatory practices.

4.     The many benefits that flow from public disclosure of registration records are threatened when states impose arbitrary, unjustified fees as a precondition of the records' release. Arizona imposes such arbitrary, unjustified fees in violation of the NVRA. The considerable fees that Arizona demands from non-partisan organizations like Project Vote for access to registration records limit the ability of private citizens and associations to monitor the activities of state election officials. Moreover, Arizona imposes such fees in a discriminatory manner in violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. Arizona provides political parties free access to registration records, *see* A.R.S. § 16-168(C), while denying such free access to similarly situated organizations such as Project Vote. *See id.* at § 16-168(E).

5.     Project Vote asks that this Court grant equitable and declaratory relief to ensure that Arizona election officials fulfill their obligation under federal law to make such records available for public inspection without imposing improper and discriminatory fees. Specifically,

Project Vote asks that this Court declare that Arizona must make all of its voter registration records publicly available for inspection and provide Project Vote with electronic copies of Arizona's computerized voter registration records at a reasonable cost.

## JURISDICTION AND VENUE

6.     This action is brought under 52 U.S.C. § 20510(b) and 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights secured by federal statutes and the Constitution of the United States.

7.     This Court has jurisdiction to adjudicate this complaint under 28 U.S.C. § 1331 and 28 U.S.C. § 1367, and it may issue a declaratory judgment and provide for further relief pursuant to 28 U.S.C. §§ 2201 and 2202.

8.     Venue lies in this District pursuant to 28 U.S.C. § 1391.

9.     An actual and justiciable controversy exists between the parties.

## PARTIES

10.     Project Vote is a national nonpartisan, nonprofit 501(c)(3) charitable organization existing under the laws of Louisiana, with its principal office in the District of Columbia. Project Vote is founded on the belief that an organized, diverse electorate is the key to a better America. Project Vote's mission is to build an electorate that accurately represents the diversity of this nation's citizenry and to ensure that every eligible citizen can register, vote, and cast a ballot that counts. To further this goal, Project Vote conducts and assists voter registration drives and requests public voting records to ensure that the applications collected from eligible applicants result in registered voters and that eligible voters are not improperly removed from the voter rolls.

11.     As part of its mission to verify that eligible voters are properly added to the voter rolls and not unlawfully removed, Project Vote uses records maintained by state and county officials. Regular access to updated voter files is important to reviewing the integrity and accuracy of the voter rolls.

12.     In addition to its efforts to ensure that eligible voters are added to and not removed from the voter rolls, Project Vote engages in nonpartisan get-out-the-vote activities to encourage participation. In 2012, Project Vote staff participated in get-out-the-vote activities in Arizona.

Effective get-out-the-vote activities are possible only if eligible voters can be identified through voter records.

13.     Project Vote's advocacy, research, and civic engagement activities in Arizona are currently limited by the prohibitively high cost of voter registration records in Arizona.

14.     Defendant Michele Reagan ("the Secretary") is sued in her official capacity as Secretary of State and as the chief election officer of Arizona. Under Arizona law, the Secretary's responsibilities include oversight of campaign finance for statewide and legislative candidates, verifying initiatives and referenda for the ballot, and certifying the official results of each election. *See* A.R.S. § 41-121. As Secretary of State and the chief election officer, the Secretary is also responsible for coordinating Arizona's responsibilities under the NVRA. *See* A.R.S. § 16-142(A)(1). The Secretary is charged with enacting rules and regulations, issuing instructions, and providing information consistent with the election laws to the electoral boards and registrars in order to promote the proper administration of election laws. *See* A.R.S. § 16-452; *see also* A.R.S. §§ 19-124(F), 41-121(A)(9), 16-550, 16-551. For example, pursuant to the Secretary's rule-making authority under A.R.S. § 16-452, the Secretary has instructed county recorders and election officials to provide free electronic copies of precinct voting records to political party chairpersons. *See* Office of the Arizona Secretary of State, Elections Procedures Manual (June 2014), *available at* https://www.azsos.gov/sites/azsos.gov/files/election_procedure_manual_2014.pdf.

15.     Defendant Helen Purcell is sued in her official capacity as County Recorder of Maricopa County. As County Recorder, Ms. Purcell is responsible for maintaining lists of electors registered to vote in Maricopa County, *see* A.R.S. §§ 16-163 – 16-166, and is responsible for providing copies of voter lists to political parties free of charge and copies of voter lists to others upon payment of a fee. *See id.* §§ 16-168(C), (E).

16.     Defendant F. Ann Rodriguez is sued in her official capacity as County Recorder of Pima County. As County Recorder, Ms. Rodriguez is responsible for maintaining lists of electors registered to vote in Pima County, *see* A.R.S. §§ 16-163 – 16-166, and is responsible for providing

1    copies of voter lists to political parties free of charge and copies of voter lists to others upon

2    payment of a fee. *See id.* §§ 16-168(C), (E).

3    **FEDERAL AND STATE STATUTORY FRAMEWORKS**

4    **The National Voter Registration Act, 52 U.S.C. §§ 20501,** *et seq.*

5    17.    Congress enacted the NVRA to protect the integrity of the electoral process by

6    better securing the fundamental right to vote with improved voter registration procedures. Pub. L.

7    No. 103-31, 107 Stat. 77 (1993) (codified at 52 U.S.C. §§ 20501, *et seq.*). In so doing, Congress

8    mandated reform to remedy "discriminatory and unfair registration laws and procedures" that have

9    "direct and damaging" effects on voter participation in federal elections and that

10   disproportionately impact voter participation among racial minorities. 52 U.S.C. § 20501(a)(3). To

11   this end, the NVRA imposes a variety of requirements on states concerning voter registration

12   procedures and policies. *See, e.g.*, *id.* §§ 20503-20507, 20509.

13   18.    Critical to the NVRA are the requirements that the "integrity of the electoral

14   process" is protected and that "accurate and current voter registration rolls [be] maintained." *Id.* §

15   20501(b)(3)-(4); *accord id.* § 20507(b). To protect that integrity and ensure that the rolls are

16   accurate and current, the Public Disclosure Provision requires states to  make voter registration

17   records publicly available for inspection and photocopying:

> Each State shall maintain for at least 2 years and shall make available for public
> inspection and, where available, photocopying *at a reasonable cost*, all records
> concerning the implementation of programs and activities conducted for the purposes
> of ensuring the accuracy and currency of official lists of eligible voters, except to the
> extent that such records relate to a declination to register to vote or to the identity of
> a voter registration agency through which any particular voter is registered.

22   52 U.S.C. § 20507(i)(1) (emphasis added). The Public Disclosure Provision is essential to the

23   NVRA's purpose of ensuring accurate and non-discriminatory voter registration practices because

24   it allows the public to confirm that states are abiding by federal law. *See id.* § 20501(b).

25   19.    The data contained in Arizona's computerized state voter registration records

26   ("voter file") is subject to disclosure under the Public Disclosure Provision as it is unquestionably

27   a record concerning the implementation of programs and activities conducted for the purpose of

28   ensuring the accuracy and currency of official lists of eligible voters. Pursuant to the NVRA,

Arizona officials are obligated to produce the computerized voter file "for public inspection[.]" *Id.* § 20507(i)(1). Arizona officials are obligated to provide such records in an electronic file so that the data may be examined by the requesting party in the manner in which they are maintained and in a manner that allows the examining party to verify the integrity of the data, and ensure that the list of eligible voters is current and accurate.

20.     County-level data regarding current voter lists, requests for an early voting ballot and/or absentee ballot application, and the processing of early voting ballots and/or absentee ballots are subject to disclosure under the Public Disclosure Provision, as they are unquestionably records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters. Pursuant to the NVRA, Arizona officials are obligated to produce such county-level records "for public inspection[.]" *Id.*

21.     If photocopying is available, voter records subject to the Public Disclosure Provision must be made available for "photocopying at a reasonable cost[.]" *Id.* Electronic copies of electronically maintained records are photocopies within the meaning of the NVRA. The plain language of the Public Disclosure Provision thus prohibits Arizona officials from charging copying costs that are disproportionately high in relation to the actual cost of producing an electronic copy of voter records. The NVRA provides that Arizona may charge only for the *reasonable* cost of photocopying. *See id.*

**The Equal Protection Clause and A.R.S. § 16-168**

22.     The Equal Protection Clause of the Fourteenth Amendment of the United States Constitution guarantees "equal protection of the laws" and is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).

23.     Arizona law requires county recorders to provide electronic copies of precinct lists of qualified voters "without charge" to the county and state chairmen of certain political parties. A.R.S. § 16-168(C). Precinct lists are also provided to other persons for non-commercial uses, but only if the requesting party pays a fee of five cents for each voter name reproduced in a printed list and one cent for each name in an electronic copy. *Id.* § 16-168(C).

1

## **FACTUAL ALLEGATIONS**

2       24.     Arizona election officials maintain the state's voter registration information in an

3   electronic database. Arizona election officials are prepared to provide much of the information

4   housed in this database in an electronic medium but refuse to release the information unless

5   Project Vote pays one cent for each name contained in the records provided, relying on A.R.S. §

6   16-168(E). *See* Apr. 13, 2015, Letter to Project Vote from J. Driscoll-MacEachron, attached hereto

7   as **Exhibit 1**.

8       25.     Project Vote sent letters to the Director of Maricopa County Elections and Director

9   of Pima County Elections on November 30, 2012, requesting (1) an electronic copy of the current

10  voter list for Maricopa and Pima Counties; (2) data regarding requests for early voting ballot

11  and/or absentee ballot applications; and (3) data relating to the processing of early voting ballots

12  and/or absentee ballots. *See* Nov. 30, 2012, Letter from Project Vote to K. Osborne, attached as

13  **Exhibit 2**; Nov. 30, 2012, Letter from Project Vote to B. Nelson, attached hereto as **Exhibit 3**.

14      26.     The following month, Project Vote received a letter from the Maricopa County

15  Attorney's Office indicating that the requested records were available but that Defendant Ms.

16  Purcell's Maricopa County Recorder's Office would require Project Vote to pay nearly $50,000 to

17  obtain the electronic information. *See* Dec. 21, 2012, Letter to Project Vote from R. Pennington,

18  attached hereto as **Exhibit 4**.

19      27.     On February 3, 2014, Project Vote sent a letter to the Director of Pima County

20  Elections requesting electronic records, including a list of voters removed from the Pima County

21  rolls in December 2012 and December 2013. *See* Feb. 3, 2014, Letter from Project Vote to B.

22  Nelson, attached hereto as **Exhibit 5**.

23      28.     Christopher Roads of Defendant Ms. Rodriguez's Pima County Recorder's Office

24  responded that the list of voters removed from the Pima County rolls could be provided only if

25  Project Vote paid a programming fee of $50.00 per hour as well as various "costs for particular

26  data fields." *See* Mar. 3, 2014, Letter to Project Vote from C. Roads, attached hereto as **Exhibit 6**.

27      29.     On August 5, 2014, Project Vote submitted yet another request for Arizona voter

28  list maintenance records, this time through the Secretary's office. The request sought a list of all

registered voters whose registrations (1) had been canceled between May 1, 2014, and the date the Secretary's office responded to the request or (2) had not been removed but had been sent a notice requesting updated address information during the same timeframe, with a copy of the sample notice. Project Vote also requested records concerning planned list maintenance activities. *See* Aug. 5, 2014, Letter to the Secretary, attached hereto as **Exhibit 7**.

30.     The Secretary's office responded that it did not possess the requested information, despite the fact that the NVRA requires Arizona to maintain these records and make them available for inspection at no cost or photocopy the records at a reasonable cost. *See* Aug. 18, 2014, Letter from the Secretary to Project Vote, attached hereto as **Exhibit 8**.

31.     On February 24, 2015, Project Vote provided written notice to the Secretary that the "State of Arizona and its local election authorities are operating in violation of" the Public Disclosure Provision of the NVRA and provided notice that if such violations are not corrected within 90 days, Project Vote may bring an enforcement action pursuant to Section 11(b) of the NVRA (codified at 52 U.S.C. § 20510(b)). *See* Feb. 24, 2015, Letter from Project Vote to the Secretary, attached hereto as **Exhibit 9**.

32.     On April 13, 2015, Arizona's Assistant Attorney General, Jim Driscoll-MacEachron, responded and asked that Project Vote "submit a list of the records you seek [to inspect] and allow sufficient time for those records to be gathered" and notified Project Vote that "additional fees may apply for the creation of new lists or reports." *See* Exhibit 1.

33.     Project Vote submitted the list of documents it requested be made available for inspection under the NVRA on July 15, 2015. *See* July 15, 2015, Letter from Project Vote to J. Driscoll-MacEachron, attached hereto as **Exhibit 10**.

34.     Mr. Driscoll-MacEachron responded on August 12, 2015, stating only that the Secretary's office is "in the process of gathering information for inspection," without providing a date certain as to when such information would be gathered and/or when Project Vote could inspect the records. *See* Aug. 12, 2015, Letter from J. Driscoll-MacEachron to Project Vote, attached hereto as **Exhibit 11**.

35.     Mr. Driscoll-MacEachron subsequently informed Project Vote that certain requested records would be made available at the Secretary's office and proposed inspection dates. *See* Sept. 21, 2015, Letter to Project Vote from J. Driscoll-MacEachron, attached hereto as **Exhibit 12**.

36.     Project Vote responded on November 2, 2015, and provided clarification of records it sought to be made available for inspection. *See* Nov. 2, 2015, Letter from Project Vote to J. Driscoll-MacEachron, attached hereto as **Exhibit 13**.

37.     Mr. Driscoll-MacEachron replied that the Secretary "should be able to produce records for inspection that are responsive to many of your requests." *See* Nov. 4, 2015, Letter to Project Vote from J. Driscoll-MacEachron, attached hereto as **Exhibit 14**. The November 4 letter also stated that records would be available for inspection on November 6, 2015. *See id.* at 2.

38.     Project Vote, through its General Counsel Brian Mellor, appeared at the Secretary's office on November 6, 2015, to inspect the Secretary's records.

39.     Mr. Mellor was permitted to verbally request certain electronic searches that were entered by one of the Secretary's agents and to view some, but not all, of the results, which appeared six rows at a time on the computer screen. Each search result corresponded to a particular voter.

40.     Additional details regarding a particular voter were visible by clicking on a search result and accessing a new screen that featured various tabs containing the new information.

41.     Notwithstanding the Public Disclosure Provision, the Secretary did not permit Project Vote to arrange and categorize the electronic voter information in the same way a local official would be able to, and as Project Vote had requested, and prohibited Project Vote from viewing certain screens altogether. *See* 52 U.S.C. § 20507(i)(1).

42.     Notwithstanding the Public Disclosure Provision, the Secretary did not permit Project Vote to obtain, at a reasonable fee, electronic copies of the voluminous electronic records or search results in the format maintained by Arizona. *See id.* The only option available to Mr. Mellor was to transcribe limited data by hand, effectively precluding Project Vote from

meaningfully inspecting the records in order to verify the accuracy of the election records or the propriety of the practices yielding such records.

**Defendants Have Violated the NVRA by Refusing to Allow Project Vote to Inspect Certain Electronic Records at No Cost and by Attempting to Assess Unreasonable Fees for Copying Electronic Records**

43.     Defendants have not made the voter records available for inspection within the meaning of the NVRA.

44.     With respect to records kept electronically, electronic copies of such records are "photocopies" within the meaning of the NVRA. Defendants' conduct of charging one cent for each name associated with a voter registration record violates the reasonableness requirement of the Public Disclosure Provision because the formula results in fees of tens of thousands of dollars and bears no relation to the actual cost of producing electronic copies of the records.

45.     Despite Project Vote's written objections to the imposition of any fee for the inspection of records and the imposition of a disproportionately high fee for producing an electronic copy of electronically-maintained voter registration records, the Secretary has refused to eliminate and/or reduce such fees.

46.     The NVRA's civil enforcement provision creates a private right of action for persons "aggrieved by a violation" after providing "written notice of the violation to the chief election official of the State involved." 52 U.S.C. § 20510(b). If the violation is not corrected within 90 days after that official's receipt of such notice, the aggrieved person may bring a civil action in the appropriate district court for declaratory or injunctive relief with respect to the violation. *Id.*

47.     As outlined above, the Secretary has failed to take remedial action within the 90-day period prescribed by 52 U.S.C. § 20510(b), refusing to charge a reasonable cost as required by the Public Disclosure Provision.

48.     Upon information and belief, voting records are provided to political parties without the assessment of any fee. *See* A.R.S. § 16-168(C).

49.     Project Vote brings this suit to enforce its private right of action and rights under the NVRA and to challenge Arizona's policy of imposing unreasonable and unlawful fees for the

inspection and copying of voter registration records. Because these unreasonable and unlawful fees are imposed upon Project Vote and the public generally but are not imposed upon major political parties, Project Vote also challenges Arizona's imposition of fees as a violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.

## COUNT I

### Violation of the NVRA, 52 U.S.C. § 20507(i)(1)

50.     Project Vote repeats and re-alleges the preceding allegations as though fully set forth herein.

51.     The Public Disclosure Provision unambiguously requires that statewide voter registration records be made available to the public for inspection free of charge and that photocopies of the voter registration records be provided at a reasonable cost. 52 U.S.C. § 20507(i)(1).

52.     Defendants have violated, and continue to violate, the Public Disclosure Provision by refusing to make the voter file available for inspection by Project Vote within the meaning of the NVRA.

53.     Defendants have violated, and continue to violate, the Public Disclosure Provision by refusing to provide copies of the records identified in Project Vote's requests in an electronic medium unless Project Vote paid nearly $50,000—notwithstanding the ease with which the requested information can be electronically copied.

54.     The NVRA and its Public Disclosure Provision place binding requirements on the states. To the extent that any state law, as applied in the context of voter registration records, conflicts with the NVRA, such law is preempted and superseded by the NVRA as a federal statute.

55.     To the extent that any Arizona statute, regulation, practice, or policy allows officials to charge for making documents available for public inspection, such provisions, practices, and policies conflict with the plain language of the NVRA and are therefore invalid, unenforceable, and preempted by the NVRA.

## COUNT II

### Violation of the Equal Protection Clause of the Fourteenth Amendment

56.     Project Vote repeats and re-alleges the preceding allegations as though fully set forth herein.

57.     Defendants give preferential treatment to political parties in allowing access to voter records. In particular, political parties receive free access to a significant range of records under A.R.S. § 16-168(C).

58.     Defendants' refusal to allow Project Vote access to the requested records without charging an excessive fee constitutes disparate treatment.

59.     This disparate treatment imposes serious burdens on Project Vote's First Amendment rights of speech and association and on electors' First Amendment rights of association and Fourteenth Amendment voting rights.

60.     Any legitimate interest the State of Arizona may have in charging excessive fees for access to records is slight in comparison to the burdens on Project Vote's rights of speech and association and on electors' association and voting rights.

61.     Defendants' actions therefore violate the Equal Protection Clause of the Fourteenth Amendment.

## COUNT III

### Declaratory Judgment

62.     Project Vote repeats and re-alleges the preceding allegations as though fully set forth herein.

63.     A justiciable controversy exists between Project Vote and Defendants concerning Defendants' obligations under the Public Disclosure Provision and the NVRA.

64.     There is no adequate remedy, other than that requested herein, by which this controversy may be resolved.

65.     Project Vote seeks a declaration to resolve the controversy between the parties regarding Defendants' obligations under the Public Disclosure Provision and the NVRA.

66.     The Court should make declarations about Defendants' obligations under the Public Disclosure Provision, including, but not limited to the following:

a.      The Public Disclosure Provision unambiguously requires that voter registration records in the voter file be made available to the public for inspection free of charge and that photocopies of these records be provided to the public at a reasonable cost.

b.      Defendants must allow Project Vote to inspect voter registration records in the voter file free of charge and/or allow Project Vote to inspect records regarding current voter lists, requests for early voting ballot and/or absentee ballot applications, and the processing of early voting ballots and/or absentee ballots free of charge.

c.      Defendants must disclose the records requested by Project Vote in electronic form free of charge or at a reasonable cost of copying the records.

67.     Project Vote is entitled to a declaratory judgment against Defendants.

## COUNT IV

### Injunctive Relief

68.     Project Vote repeats and re-alleges the preceding allegations as though fully set forth herein.

69.     Absent injunctive relief, Project Vote will suffer irreparable harm in that it will be hampered in its mission of making sure that eligible voters can register, vote, and cast a ballot that counts. Specifically, Project Vote will be hampered in educating and assisting Arizona voters to register in this election cycle, and will be prevented from assessing whether eligible voters are properly added to and not removed from the Arizona voter rolls in time to exercise their rights to vote in the upcoming elections.

70.     Legal remedies are inadequate to address the state's continuing violation of the NVRA. No award of damages would allow Project Vote to fully carry out its mission.

71.     Project Vote is likely to prevail on the merits because Defendants' conduct contravenes the plain language of the Public Disclosure Provision and it is in the public's interests

to ensure protection of their rights under the NVRA and Equal Protection Clause of the United States Constitution.

72.     The balance of interests, reflected in the Public Disclosure Provision, weighs strongly in favor of public access to these voter records. Granting injunctive relief would cause no harm to the state, which would be required to do nothing more than fulfill a statutory duty to provide access.

73.     Project Vote is entitled to injunctive relief.

### PRAYER FOR RELIEF

WHEREFORE, Project Vote respectfully requests that this Court enter judgment in its favor and:

A)     Declare that Defendants are in violation of the Public Disclosure Provision of the NVRA;

B)     Declare that the NVRA preempts any Arizona law, rule, regulation, or policy that Arizona officials rely upon in charging improper fees for election records;

C)     Declare that the NVRA preempts any Arizona law, rule, regulation, or policy that Arizona officials rely on in failing to make available for public inspection, without cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters, except to the extent that such records relate to a declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered;

D)     Declare that the provision of voting records to political parties without charge while charging fees to others seeking the same records for similar reasons violates the Equal Protection Clause of the United States Constitution;

E)     Permanently enjoin Defendants from charging unreasonable and discriminatory fees not permitted by the Public Disclosure Provision of the NVRA and in violation of the Equal Protection Clause of the United States Constitution;

F)     Permanently enjoin Defendants from limiting access to records required to be made available for public inspection by the Public Disclosure Provision of the NVRA;

1    G)    Award Project Vote costs and fees incurred in pursuing this action, including

2  attorneys' fees and reasonable expenses, as authorized by 52 U.S.C. § 20510(c), 42 U.S.C. § 1988,

3  and other applicable provisions; and

4    H)    Grant such other and further relief as the Court deems proper.

5    Dated this 27th day of April, 2016.

6                               SACKS, RICKETTS & CASE LLP

7                               By:  s/Allison Kierman
                                      Cynthia A. Ricketts
8                                     Allison Kierman
                                      Natalya Ter-Grigoryan
9                                     2800 N. Central Avenue, Suite 1230
10                                    Phoenix, AZ 85004
                                      (602) 385-3370
11                                    cricketts@srclaw.com
                                      akierman@srclaw.com
12                                    ntergrigoryan@srclaw.com

13                                    and

14
                                      Michelle E. Kanter Cohen
15                                    (*pro hac vice* application forthcoming)
                                      PROJECT VOTE
16                                    1420 K Street NW
                                      Suite 700
17                                    Washington, DC 20005
                                      (202) 546-4173
18                                    mkantercohen@projectvote.org

19                                    and

20
                                      Colleen A. Conry
21                                    Adam E. Winship
                                      Ian B. Brooks
22                                    ROPES & GRAY LLP
                                      2099 Pennsylvania Ave NW
23                                    Washington, DC 20006
                                      (202) 508-4695
24                                    adam.winship@ropesgray.com

25                                    *Attorneys for Plaintiff*
26                                    *Project Vote, Inc.*

27

28

-15-

# EXHIBIT 1



**MARK BRNOVICH**
ATTORNEY GENERAL

**OFFICE OF THE ARIZONA ATTORNEY GENERAL**

**SOLICITOR GENERAL'S OFFICE**

**JIM DRISCOLL-MACEACHRON**
ASSISTANT ATTORNEY GENERAL
DIRECT PHONE NO. (602) 542-8137
JAMES.DRISCOLL-MACEACHRON @AZAG.GOV

April 13, 2015

*Sent via U.S. mail and email*

Brian Mellor
General Counsel
Project Vote
805 15th Street NW
Suite 250
Washington, DC 20005
*bmellor@projectvote.org*

> Re:   **Request for National Voter Registration Act Information**

Dear Mr. Mellor:

I represent the Secretary of State's Office, and I am writing in response to your letter dated February 24, 2015, regarding alleged violations of the National Voter Registration Act. As an initial matter, thank you for your assistance in providing the original correspondence referred to in your February 24, 2015 letter. It has helped us more fully understand the questions you have raised, and I believe it can help us reach a mutually agreeable resolution.

To the extent that you are requesting the ability to inspect records, the Secretary's Office and the relevant county recorder's offices agree that you may inspect NVRA records or other public records without charge during business hours at their respective locations. If you wish to inspect records such as these as indicated on page 3 of your February 24, 2015 letter, please let us know and we will be happy to assist in arranging your inspection. In order to prepare the records you wish to inspect, we do ask that you submit a list of the records you seek and allow sufficient time for those records to be gathered.

In some of your requests, however, you appear to be requesting lists summarizing records in the relevant office's possession rather than the records themselves. Where that is the case, additional fees may apply for the creation of new lists or reports. To the extent that the relevant office has the ability to create the requested list, we would be happy to work with you to clarify where original records would be responsive to your requests and where you would prefer new reports to be

Brian Mellor
April 13, 2015
Page 2

generated.  We would again request that you identify which lists or reports you wish to be generated and allow sufficient time for those lists or reports to be generated.

If, rather than inspection, you would prefer to receive copies of the records you request, the office you seek those copies from will request the payment of reasonable costs.  As you noted, the NVRA provides for costs where copies are requested.  52 U.S.C. § 20507(i)(1).  In some instances, A.R.S. § 16-168(E) will provide the relevant fee.  You argued in your February 24 letter that the NVRA preempts A.R.S. 16-168(E); to the extent that argument was based on costs associated with inspection, that argument is inapplicable here.  A.R.S. § 16-168(E) applies only to requests for copies, and the relevant agencies are willing to assist in inspection without applying the fees set out in A.R.S. § 16-168(E).

That said, we do want to clarify that the NVRA does not preempt A.RS. § 16-168(E) or bar the implementation of fees to recoup reasonable costs.  You cited *Arizona v. Inter Tribal Council of Arizona, Inc.*, 133 S.Ct. 2246, 2253-54 (2013), for the proposition that the NVRA preempted Arizona law, but that case makes clear that preemption occurs only where there is a conflict between the NVRA and state law.  *See id.* ("[S]o far as [Congress's authority under the Elections Clause ] is exercised, *and no farther*, the regulations effected supersede those of the State which are inconsistent therewith.") (quoting *Ex parte Siebold*, 100 U.S. 371, 392 (1879)) (emphasis added).  If federal and state laws do not conflict, both remain operative.  *See Ex parte Siebold*, 100 U.S. at 384 (stating that if federal and state law conflict, "the latter, *so far as the conflict extends* ceases to be operative") (emphasis added).  Your letter does not identify a conflict between the NVRA and A.R.S. 16-168(E).  The NVRA provides for the collection of reasonable costs, 52 U.S.C. § 20507(i)(1), and A.R.S. § 16-168(E) establishes one set of reasonable costs in Arizona.  If, after this letter, you continue to believe that the NVRA preempts A.R.S. § 16-168(E), we would appreciate it if you would identify the conflict you believe exists and any authorities that support your understanding of that conflict.

If you have any additional questions or concerns, please let me know.  Additionally, if you wish to arrange an inspection, please do not hesitate to contact us.

Sincerely,

Jim Driscoll-MacEachron
Assistant Attorney General

4404334

# EXHIBIT 2



<u>Via Fax and Email</u>

November 30, 2012

Karen Osborne
Director, Maricopa County Elections
111 S. 3rd Ave. #102
Phoenix, AZ 85003
Fax: (602) 506-3069
voterinfo@risc.maricopa.gov

      Re: Records Request

Dear Director Nelson:

Pursuant to the National Voter Registration Act of 1993, 42 U.S.C. § 1973gg-6(i)(1) as well as
the Arizona Public Records Law, Arizona Revised Statutes § 39-121 *et seq.*, Project Vote
requests that you promptly provide the following information in electronic format:

1. Current voter list for Maricopa County including the following data:
     i. First Name;
    ii. Last Name;
   iii. Middle Name;
    iv. Suffix;
     v. Street Number and Address;
    vi. Apartment Number;
   vii. City;
  viii. State;
    ix. Zip Code;
     x. Mailing address, if different;
    xi. Phone Number (including area code);
   xii. Date of Birth or age;
  xiii. Voter Identification Number (not the ID number provided by the
         applicant);
   xiv. Date registered to vote;
    xv. State or country of birth;
   xvi. Whether the voter is included on the Permanent Early Voting List;
  xvii. Type of proof of citizenship provided, if any; and
 xviii. Status of voter, if any (i.e., suspended, active, inactive, etc.)

2. Electronic data in text or comparable data format relating to requests for early voting ballot and/or absentee ballot applications in Maricopa County received between July 15, 2012 and November 6, 2012, including but not limited to data about:

   a. Applicant's identification such as:
      i. First Name;
      ii. Last Name;
      iii. Middle Name;
      iv. Suffix;
      v. Street Number and Address;
      vi. Apartment Number;
      vii. City;
      viii. State;
      ix. Zip Code;
      x. Mailing address, if different;
      xi. Phone Number (including area code);
      xii. Date of Birth or age;
      xiii. Whether the person requested to be added to the Permanent Early Voting List (PEVL);
      xiv. State or country of birth;
      xv. Race, if available; and
      xvi. Voter Identification Number (not the ID number provided by the applicant).

   b. Processing of the application for early voting ballot and/or absentee ballot such as:
      i. Date application signed by prospective voter;
      ii. Date application received;
      iii. Date application entered in to database;
      iv. Current status (including whether ballot was issued);
      v. Whether applicant is included on the Permanent Early Voting List (PEVL);
      vi. Date ballot was issued, if any;
      vii. Whether ballot was returned to the election official;
      viii. Date status changed, if at all;
      ix. History of any changes in status, if any;
      x. Types of letters or notices mailed, if any;
      xi. Dates letters or notices mailed, if at all;
      xii. Status of letter or notice, i.e., whether it was returned;
      xiii. Any response to notice or letter; and

   c. Reason(s) any application for early voting ballot and/or absentee ballot did not result in a ballot being sent to the applicant;

   d. Reason why any application for early voting ballot and/or absentee ballot was rejected, (e.g. not registered to vote);

   e. Reason why any application for early voting ballot and/or absentee ballot was not processed, (e.g. application incomplete);

f. Voting history for the 2012 election for any applicant that requested an early voting ballot and/or absentee ballot for the 2012 general election, including but not limited to the following:
   i. whether the applicant cast a ballot, including the means of voting (i.e, absentee/mail ballot, in-person regular ballot, provisional, etc.)
   ii. whether, if the person cast a provisional ballot, that ballot was counted
   iii. whether, if the person cast an absentee ballot, that ballot was counted

3. Data, by polling place and precinct, regarding the number of provisional ballots cast per precinct in the 2012 General Election in Maricopa County.
4. Data, by polling place and precinct, regarding the number of provisional ballots counted per precinct in the 2012 General Election in Maricopa County.
5. Data, by polling place and precinct, regarding the number of total ballots of any type cast per precinct in the 2012 General Election in Maricopa County.
6. Information sufficient to determine the location of the polling places and precincts utilized in the 2012 General Election in Maricopa County.
7. Information on the codes used in the data records such as the name and description of fields in the data and a description of each code used in a field; for example – the field named "FName" is First Name, or a "P" in the Status field means "Pending".
8. A sample letter of each type of notice of disposition notice used to notify applicants about the status of their early voting ballot and/or absentee ballot application.

In this request, the terms "absentee ballot" and "early voting ballot" are used interchangeably.

To the extent there is no data for a specific item requested, please state that no such data exists. If data not specifically requested exists, provide the data available that is closest to the requested information that is not available. For example, if there is no data on the history of the changes in status, provide data from the field that contains the last date status was changed.

Project Vote expects that charges imposed for this information will comply with Section 8(i)(1) of the NVRA. Please inform me of the reasonable costs for this information, which may be shipped to me at the below address.

Sincerely,

Catherine M. Flanagan, Esq.
Director of Election Administration
Project Vote
cflanagan@projectvote.org

1350 Eye Street NW • Suite 1250 • Washington, DC. 20005
(202) 546-4173 T • (202) 629-3754 F • www.projectvote.org

# EXHIBIT 3



<u>Via Fax and Email</u>

November 30, 2012

Brad R. Nelson, CERA
Director, Pima County Elections
Pima County Elections Center
6550 S. Country Club Road
Tucson, AZ 85756
Fax: (520) 724-6870
webmaster@recorder.pima.gov

      Re: Records Request

Dear Director Nelson:

Pursuant to the National Voter Registration Act of 1993, 42 U.S.C. § 1973gg-6(i)(1) as well as the Arizona Public Records Law, Arizona Revised Statutes § 39-121 *et seq.*, Project Vote requests that you promptly provide the following information in electronic format:

1.  Current voter list for Pima County including the following data:
    - i.     First Name;
    - ii.    Last Name;
    - iii.   Middle Name;
    - iv.    Suffix;
    - v.     Street Number and Address;
    - vi.    Apartment Number;
    - vii.   City;
    - viii.  State;
    - ix.    Zip Code;
    - x.     Mailing address, if different;
    - xi.    Phone Number (including area code);
    - xii.   Date of Birth or age;
    - xiii.  Voter Identification Number (not the ID number provided by the applicant);
    - xiv.   Date registered to vote;
    - xv.    State or country of birth;
    - xvi.   Whether the voter is included on the Permanent Early Voting List;
    - xvii.  Type of proof of citizenship provided, if any; and
    - xviii. Status of voter, if any (i.e., suspended, active, inactive, etc.)

Director Brad Nelson
November 30, 2012
*Page 2 of 3*

2. Electronic data in text or comparable data format relating to requests for early voting ballot and/or absentee ballot applications in Pima County received between July 15, 2012 and November 6, 2012, including but not limited to data about:
   a. Applicant's identification such as:
      i. First Name;
      ii. Last Name;
      iii. Middle Name;
      iv. Suffix;
      v. Street Number and Address;
      vi. Apartment Number;
      vii. City;
      viii. State;
      ix. Zip Code;
      x. Mailing address, if different;
      xi. Phone Number (including area code);
      xii. Date of Birth or age;
      xiii. Whether the person requested to be added to the Permanent Early Voting List (PEVL);
      xiv. State or country of birth;
      xv. Race, if available; and
      xvi. Voter Identification Number (not the ID number provided by the applicant).
   b. Processing of the application for early voting ballot and/or absentee ballot such as:
      i. Date application signed by prospective voter;
      ii. Date application received;
      iii. Date application entered in to database;
      iv. Current status (including whether ballot was issued);
      v. Whether applicant is included on the Permanent Early Voting List (PEVL);
      vi. Date ballot was issued, if any;
      vii. Whether ballot was returned to the election official;
      viii. Date status changed, if at all;
      ix. History of any changes in status, if any;
      x. Types of letters or notices mailed, if any;
      xi. Dates letters or notices mailed, if at all;
      xii. Status of letter or notice, i.e., whether it was returned;
      xiii. Any response to notice or letter; and
   c. Reason(s) any application for early voting ballot and/or absentee ballot did not result in a ballot being sent to the applicant;
   d. Reason why any application for early voting ballot and/or absentee ballot was rejected, (e.g. not registered to vote);
   e. Reason why any application for early voting ballot and/or absentee ballot was not processed, (e.g. application incomplete);

 f. Voting history for the 2012 election for any applicant that requested an early voting ballot and/or absentee ballot for the 2012 general election, including but not limited to the following:

  i. whether the applicant cast a ballot, including the means of voting (i.e, absentee/mail ballot, in-person regular ballot, provisional, etc.)

  ii. whether, if the person cast a provisional ballot, that ballot was counted

  iii. whether, if the person cast an absentee ballot, that ballot was counted

3. Data, by polling place and precinct, regarding the number of provisional ballots cast per precinct in the 2012 General Election in Pima County.

4. Data, by polling place and precinct, regarding the number of provisional ballots counted per precinct in the 2012 General Election in Pima County.

5. Data, by polling place and precinct, regarding the number of total ballots of any type cast per precinct in the 2012 General Election in Pima County.

6. Information sufficient to determine the location of the polling places and precincts utilized in the 2012 General Election in Pima County.

7. Information on the codes used in the data records such as the name and description of fields in the data and a description of each code used in a field; for example – the field named "FName" is First Name, or a "P" in the Status field means "Pending".

8. A sample letter of each type of notice of disposition notice used to notify applicants about the status of their early voting ballot and/or absentee ballot application.

In this request, the terms "absentee ballot" and "early voting ballot" are used interchangeably.

To the extent there is no data for a specific item requested, please state that no such data exists. If data not specifically requested exists, provide the data available that is closest to the requested information that is not available. For example, if there is no data on the history of the changes in status, provide data from the field that contains the last date status was changed.

Project Vote expects that charges imposed for this information will comply with Section 8(i)(1) of the NVRA. Please inform me of the reasonable costs for this information, which may be shipped to me at the below address.

Sincerely,

Catherine M. Flanagan, Esq.
Director of Election Administration
Project Vote
cflanagan@projectvote.org

# EXHIBIT 4



# Maricopa County Attorney
BILL MONTGOMERY

December 21, 2012

Catherine M. Flanagan
Director of Election Administration
PROJECT VOTE
1350 Eye Street NW, Suite 1250
Washington, DC 20005

**Re: Records Request of November 30, 2012**

Dear Ms. Flanagan;

We are responding on behalf of Ms. Karen Osborne, Director, Maricopa County Elections, in regard to your records request of November 30, 2012.

In response to Request Number 1, Maricopa County's voter registration database contains the names of more than 2.2 million registrants. Pursuant to A.R.S. § 16-168 (E), the County Recorder shall prepare copies of the official precinct list for a fee of one cent for each name for an electronic medium plus the cost of a computer disk. The list will contain all of the information requested except for the type of proof of citizenship the individual provided. Such records are not maintained by the Recorder. In addition, the list will contain only the names of approximately 5,000 individuals who are "eligible persons" as defined by A.R.S. § 16-153 whose voter registration information shall remain confidential. The estimated cost for this data is $22,000.

In response to Request Number 2(a) and (b)(iv) and (v), the Maricopa County Recorder maintains a database of all registrants on the Permanent Early Voting List (PEVL). The date an individual requested to be on the early voting list and the date someone requested an early ballot for a particular election is not maintained in the PEVL. Please note that information regarding a person's race is not collected as part of the voter registration process and is therefore not available and not part of our voter registration database. Additionally, the date of birth or age is not included or part of the PEVL data. Because this database also is derived from voter registration information, the County Recorder charges a fee of one cent for each name as required by A.R.S. § 16-168 (E). There are currently over 1.2 million registered voters on the PEVL and the estimated cost for this data is $12,000.

Attachment 1 is a print out of the available fields of information for voters in the most recent election. In response to the remaining records requested in Request Number 2(b), the County Recorder does not maintain records that reflect (i) the date the early ballot request was signed by the voter, (ii) the date the early ballot request was received, and the (iii) date the application was entered into the database. As for whether the early ballot was returned (b)(vii), any status changes (b)(viii), the history of any changes in status (b)(ix), and the voting history 2(f), those records are maintained in the County's Voted File. The

PROJECT VOTE
December 21, 2012
Page 2 of 2

Voted File contains 1,584,680 records. For an electronic copy of the Voted File for the November 6, 2012, election, the cost, at one cent per name, is $15,846.80. The County Recorder does not have documents responsive to requests 2(b)(x)-(xiii), (c), (d), and (e).

In response to Requests 3, 4 and 5, this information is available. A copy of those records can be provided on a compact disc for the cost of $25.00.

In response to Request Number 6, the location of all polling places and precincts in Maricopa County is contained on the Maricopa County Record website, recorder.maricopa.gov.

In response to Request Number 7, we believe the Attachments indicate the data fields, if additional information is needed please advise.

In response to Request Number 8, the Maricopa County Recorder does not have nor maintains records of this type of notice.

In accord with A.R.S. § 16-168 (E), the Recorder is required to charge one cent for each name contained in release of records in an electronic medium. We estimate the total cost to provide all the information requested to be $49,800.00.

Please feel free to contact me via electronic mail at penningr@mcao.maricopa.gov, by telephone at (602) 506-8541, or at the above address.

Sincerely,

Maricopa County Attorney's Office
Civil Services Division

Randall B. Pennington
Deputy County Attorney

RBP/jc

*Enclosures*

S:\HR\PRR\Project Vote PRR 122112.docx

VM55B - VOTED FILE

| COLUMN | FIELDS |
|--------|--------|
| 1 | Field 1 Voter identification number |
| 2 | Field 2 Election number - example: 613 |
| 3 | Field 3 Election date as '20000314' |
| 4 | Field 4 Voter first name |
| 5 | Field 5 Voter middle name |
| 6 | Field 6 Voter last name |
| 7 | Field 7 Address: House number |
| 8 | Field 8 Address: House number suffix (i.e. ½ etc.) |
| 9 | Field 9 Address: Street direction (N,S,E,W,NW,SW,NE,SE) |
| 10 | Field 10 Address: Street name |
| 11 | Field 11 Address: Street type |
| 12 | Field 12 Address: Street suffix (N,S,E,W,NW,SW,NE,SE) |
| 13 | Field 13 Address: Unit or apartment number |
| 14 | Field 14 Address: Mailing city based on zip code |
| 15 | Field 15 Address: zip code |
| 16 | Field 16 Phone number |
| 17 | Field 17 Precinct code assigned by Maricopa County |
| 18 | Field 18 CPC: Consolidated precinct code |
| 19 | Field 19 Party |
| 20 | Field 20 Ballot type |
| 20 | P = Voted at polling place |
| 20 | Q = Voted a ballot to be verified at polling place |
| 20 | R = Early ballot sent and returned |
| 20 | S = Early ballot sent not returned |
| 20 | X = Early ballot voided |
| 21 | Field 21 City limits district |
| 22 | Field 22 School district |
| 23 | Field 23 Party of ballot selected during open primary if different from registered party (Blank for non-primary elections) |

Field 20  Ballot type
  P = Voted at polling place                                    Y
  Q = Voted a ballot to be verified at polling place            Y
  R = Early ballot sent and returned                            Y
  S = Early ballot sent not returned                            N
  X = Early ballot voided                                       N

# EXHIBIT 5



Via U.S. Mail and Email

February 3, 2014

Brad R. Nelson, CERA
Director, Pima County Elections
Pima County Elections Center
6550 S. Country Club Road
Tucson, AZ 85756
Fax: (520) 724-6870
webmaster@recorder.pima.gov

      Re: Records Request

Dear Director Nelson:

Pursuant to the National Voter Registration Act of 1993, 42 U.S.C. § 1973gg-6(i)(1), Project Vote requests that you promptly provide the following information for inspection in electronic format (such as on a CD or DVD):

1. All written policies and/or procedures utilized to conduct the list maintenance activities referenced in the article in the Green Valley News and Sun entitled "Voter fraud? Registrar says it doesn't happen in Pima County" by Philip Francine, available at http://www.gvnews.com/news/local/voter-fraud-registrar-says-it-doesn-t-happen-in-pima/article_418eeb12-85fe-11e3-ad53-001a4bcf887a.html.  This request includes, but is not limited to, emails to employees or contractors containing instructions for conducting such list maintenance activities.

2. Identify and provide the procedures you follow to "dump[] between 30,000 and 50,000 registered voters from the rolls every December after getting Return to Sender notices after doing a mailing to their addresses or finding other discrepancies." *Id.*

2. List of voters removed from the rolls in Pima County in December of 2012 and December of 2013 including the following data:
   a. First Name;
   b. Last Name;
   c. Middle Name;
   d. Suffix;
   e. Street Number and Address;
   f. Apartment Number;
   g. City;

Director Brad Nelson
February 3, 2014
*Page 2 of 2*

    h.  State;
    i.  Zip Code;
    j.  Mailing address, if different;
    k.  Phone Number (including area code);
    l.  Year or Date of Birth or age;
    m.  Voter Identification Number (not the ID number provided by the applicant);
    n.  Date registered to vote;
    o.  State or country of birth;
    p.  Date of removal from voter roll
    q.  Reason for removal from voter roll
    r.  Status of voter at time of removal (i.e., suspended, active, inactive, etc.)
    s.  Voting history for all federal elections from 2006-present

3. Information on the codes used in the data records such as the name and description of fields in the data and a description of each code used in a field; for example – the field named "FName" is First Name, or a "P" in the Status field means "Pending."

4. A sample letter of each type of notice used to notify applicants who have been removed from the rolls of their status.

5. To the extent there is no data for a specific item requested, please state that no such data exists. If data not specifically requested exists, provide the data available that is closest to the requested information that is not available.

Project Vote expects that any charges imposed for providing this information will comply with Section 8(i)(1) of the NVRA. Electronic media may be sent to my attention at Project Vote, 805 15th St NW, Suite 250, Washington, DC 20005.

Sincerely,

Michelle Kanter Cohen
Election Counsel
Project Vote
mkantercohen@projectvote.org

# EXHIBIT 6



P. O. Box 3145
Tucson, AZ 85702-3145

Located in the Old Courthouse at:
115 North Church Avenue, Tucson, AZ

http://www.recorder.pima.gov

**F. Ann Rodriguez**
**Pima County Recorder**

*Recording history one document at a time.*

Christopher J. Roads
Chief Deputy Recorder
Registrar of Voters

Document Recording: (520) 724-4350
Voter Registration: (520) 724-4330
Fax: (520) 623-1785

March 3, 2014

Michelle Kanter  Cohen
Election Counsel
Project Vote
815 15th Street NW Suite 250
Washington DC  20005

    **RE:  Records Request**

Dear Ms. Kanter Cohen,

    On February 4, 2014, you sent a letter to Pima County Election Director Brad Nelson requesting records concerning Pima County voter registration list maintenance activities during 2012 and 2013.

    In Pima County elections duties are divided between two separate departments, each reporting to different elected officials.  The Pima County Elections Department's election duties include hiring and training poll workers, selecting polling sites, defining precinct boundaries, designing the ballot, operating polling places on Election Day, the tabulation of all ballots, preparing the official canvass of elections and other related activities.  The Elections Director reports to the Pima County Administrator who reports to the Pima County Board of Supervisors.  The Pima County Recorder's Office is responsible for maintaining the Pima County voter registration roll, conducting early voting and processing and validating provisional ballots following an election.  The Recorder's Office is under the authority of the elected county recorder, F. Ann Rodriguez.

    Since your request for information pertains entirely to the activities of the Recorder's Office, your request should have been addressed to F. Ann Rodriguez rather than Brad Nelson.  Our office received a copy of the request so we will respond without the need for you to amend your request.  However, please keep in mind that future requests should be sent to the correct county department or the response to your request could be unnecessarily delayed.

    Your request included numbered paragraphs.  I will respond to your request by paragraph identifying the corresponding number of the paragraph in your February 4, 2014 letter.  Please note that your letter contained two paragraphs numbered 2.

**In response to paragraph number 1**

    You have requested copies of all policies and procedures regarding voter roll list maintenance activities.  It is the policy of the Recorder's Office to provide our staff with written instructions for tasks.  We will provide a printed copy of the written instructions upon receipt of the copying fee set forth

Michelle Kanter Cohen
Project Vote request
3/3/2014
Page **2** of **6**

below in this response.  In order to understand the instructions, I am providing an explanation of the process.

Pursuant to the provisions of Arizona Revised Statutes (A.R.S.) section 16-166(A), almost all mail sent by our office is marked with the postal designator "Return Service Requested."  This includes voter notification cards, early ballots, notices to voters on the Permanent Early Voting List and most other forms of correspondence.  If mail addressed to a voter is returned to our office by the postal service, we examine the postal service information to determine if the addressee provided a forwarding address to the post office or not.  If an address was provided, we further examine that address to determine if the new address is within the boundaries of Pima County or not.  The mail is sorted into four categories, those with no forwarding address, those with a forwarding address in Pima County, those with a forwarding address outside Pima County and those that the postal service has marked undeliverable since the addressee is "temporarily away."  Data entry workers are then assigned to flag each voter's record to show that mail has been returned as undeliverable.  In our computer system the "flag" used is in a field called "note code" on our data entry screen so our instructions refer to the process as "note code processing."  We have different note code flags to correspond with each type of returned mail.  A voter who had mail returned with no forwarding address has a Second Miscellaneous or "2nd Misc" note code attached to his or her record.  A voter who had returned mail that included a forwarding address will have either an "In Pima" or "Out Pima" note code attached to his or her record.  A voter who had mail returned with a temporarily away indicator from the post office will have a "temp away" note code attached to their record.

In addition to the returned mail process described above, Pima County Recorder, F. Ann Rodriguez has determined that her staff will regularly compare all voters in the Pima County voter registration database to the information in the National Change of Address (NCOA) database to determine if any voter has provided a forwarding address to the post office or if the post office has identified that address as being vacant or moved with no forwarding address.  In order to keep this task manageable, the process is to check one fifth of the voter registration database each month.  The county voter database is divided into jurisdictional assignments such as Congressional district, Legislative Districts, Board of Supervisor districts, school districts, etc.  There are five members of the Pima County board of supervisors, each representing a different geographical district, so we use the supervisor districts which are identified in our system as districts 1 through 5.  The staff member assigned to the task will create a list of all voters in the supervisor district and then conduct the computer comparison with the NCOA database to see if any of the voters are identified in the NCOA database as having moved within the previous six months.  If the individual has indicated to the postal service that they have moved with a forwarding address, we receive the forwarding address from the postal software.  If the return is that the voter has moved with no forwarding address, we also receive that information back.  Any voter who is returned as moved from the NCOA check is assigned a note code flag in the same fashion as described above for returned mail.  Our plan is to check District 1 in January and July, District 2 in February and August, District 3 in March and September, District 4 in April and October and District 5 in May and November.  For operational purposes we may check two or more districts in one month and we do not conduct the district checks during the second half of an even numbered year when federal elections are occurring.

The Pima County Jury Commissioner uses both the Pima County voter registration database and the Motor Vehicle Division driver's license records to select potential jurors.  These jurors are contacted by mail through a jury summons.  Pursuant to A.R.S. § 16-165(A)(4) the jury commissioner is required to notify our office if a potential juror indicates on their questionnaire that the individual is a convicted

Michelle Kanter Cohen
Project Vote request
3/3/2014
Page 3 of 6

felon. The jury commissioner also notifies us if any of the jury summonses sent to jurors selected from the voter registration database were returned by the post office as undeliverable mail. The jury commissioner provides forwarding addresses when they receive them from the post office. These voter's records are flagged with the same note codes as listed above except for voters with no forwarding address are assigned a "jury rtn" note code rather than the 2nd misc. note code.

Prior to accepting any large mailing, the United States postal service requires that we provide a CASS certification report with every mailing. The CASS process is a part of our NCOA check. Prior to any large mailing, we run the mailing group through the NCOA and CASS check and process any returned information for the voters in these mailing groups the same as listed above.

When a ballot is returned marked undeliverable by the postal service, we conduct the same processing procedures (in pima, out pima, 2nd misc) except these voters will be flagged with a note code beginning with "blt" to indicate the returned mail was a ballot.

We regularly create mailing lists for each of the note code flags and notices are sent to the voters. During elections when the returned mail is a ballot, the In Pima and Temp Away mailing lists will be processed almost daily. In non-election periods the mailings are created within a week or two of the NCOA check. The mailed notices also include the "return service requested" indicator. The notices sent are different depending on the note code flag used so that we can provide specific information to the voters as to the need to update their registration address or to contact our office if they have not moved or changed addresses. Notices sent to voters with an In Pima note code include a voter registration form. Notices sent to voters with an Out Pima note code include a voluntary cancellation form and a return envelope. These notices are prepared for mailing in-house except for the 2nd Misc notices that are processed by a vendor. Once the notice mailings are prepared, they are transported directly to the post office. If no response is received from the voter in a time period of 35 to 45 days after the mailing date, a supervisory staff member will run a program to move the voter's status to inactive status. As part of the inactivation process, the computer system will remove the note code flag, change the status to inactive, add the date of change to the voter's record, and add an historical note that the voter's status was changed to inactive and from which note code flag group.

If the voter contacts our office to report that they have not moved or submits an update to their voter registration record, the phone operator or data entry operator will remove the note code flag from their record. A voter without the note code flag remains on active status. If the notice is returned with a different forwarding address, the original note code flag will be removed from the voter's record and a new note code flag will be assigned to the voter depending on whether the new address is inside or outside Pima County boundaries. If a new note code is assigned to the voter, a new notice is sent to the voter at the new address and they will remain on active status until at least 35 days after the new notice is mailed.

Once a voter is moved to inactive status, the voter will remain on that status until they update their address with our office, request a ballot in any election or notify us that they have not moved and the postal service was in error. The voter is returned to active status immediately on any of these events occurring.

The staff instructions on note code processing consist of 10 printed pages issued to staff on January 23, 2012. The data entry instructions for updating an existing voter's record including the removal of note code flags consists of 3 pages and were issued in May 2011. The instructions on how to

Michelle Kanter Cohen
Project Vote request
3/3/2014
Page 4 of 6

run the inactivation process consists of a single page of instructions issued to supervisory staff on February 27, 2008. As a routine business practice, we do not keep the mailing lists of voters who were sent notices of the various types after we have completed processing that note code. In order to comply with EAC statistical mandates, we keep a spread sheet listing the particular note code, how many notices were mailed, the date of mailing, the target 35 day date of inactivation, the actual date of inactivation, the number of voters inactivated and the number of voters who responded to the notice. The spread sheet is 8 pages in length.

**Your request for information contains two paragraphs numbered 2. In response to the requested information in your first paragraph number 2:**

The Pima County Recorder's Office does not "dump" voters from the voter registration roll and therefore we have no information to respond to this request. Your request cites a newspaper article as its source and the term "dump" was a term used by the reporter. The speaker identified in the article (the undersigned) used the terms "purged" and "cancelled" during the presentation.

The Pima County Recorder's office will purge eligible voters once every two years. The purging process is generally run in December of even numbered years after the November General Election process is completed. When voters are purged, they are moved to cancelled status. In order to be eligible to be purged, the voter must have been on inactive status continuously through two federal election cycles without updating their address and without voting during that time period, A.R.S. § 16-165(A)(7). No voters were purged from the Pima County voter registration rolls in 2013.

The Pima County voter registration computer system has an application to purge voters that can only be operated by a management level employee. Once the program is activated, the manager will select a date. That date is routinely July 1 two years before the date the application is run. By selecting the July 1 date two years prior, we select an inactivation date prior to the two most recent federal election cycles. The date selected for the purge process in December of 2012 was July 1, 2010. Once the date is entered and the application started, the application examines the records of all voters who are on inactive status on the date the purge application is run. The application then compares the date of inactivation to the July 1 date selected at the beginning of the process. Any voter who was moved to inactive status prior to that July 1 date and remains on inactive status when the purge application is run will then be moved to purged status effective the date the application is run. Once the application has finished processing, the application generates a printed alphabetical report listing all voters who were moved to purged status. The report lists the county voter identification number, the voter's name, date of birth and purge date. Staff uses the list to remove the voter's registration forms from the filing system. Those original voter registration forms are then sent to archival storage after each record is examined to make certain images of all forms have been preserved electronically.

The last time any voters in Pima County were moved to purged status was December 19, 2012. A total of 40,690 voters were moved to purged status on that date. The printed report is 925 pages long.

**Request in your second paragraph numbered 2:**

In this paragraph you have requested a detailed listing of the voters who were removed from the voter registration roll in December 2012 and December 2013 including names, addresses, voter history, reasons for removal, etc. This request far exceeds the data requirements under 42 U.S.C. §

Michelle Kanter Cohen
Project Vote request
3/3/2014
Page 5 of 6

1973gg-6(i)(1). As stated above, no voters were moved to purged status in December 2013. It is also not clear from your request if you are requesting data only for the voters who were purged in December 2012 or if you are also asking for voters who were moved to cancelled status for any other reason in each of those months. Other reasons for moving a person to cancelled status are: voluntary cancellation, death or felony conviction, registering to vote in another county in Arizona, and registering to vote in another state. Without clarification on exactly the data you are requesting, I cannot respond to this request.

In addition, the Pima County Recorder's office computer system has no report in existence that will generate the data in the format requested. If you are requesting that we create a new data report for you, the programming fee is $50.00 per hour. Data is also provided at a per voter fee for the data requested. Without knowing the specifics of your request (i.e. are you requesting more information than just the purged voters), I cannot provide you with an estimate of the programming time or costs for this data report. You will also need to complete our data request form that can be found on our website, www.recorder.pima.gov/images/vr_request_form.pdf. That form includes the costs for particular data fields so you can use that form to estimate costs except for the programming costs. Once we receive the form we will provide you with an estimate of the costs to produce the data. We require full payment in advance before the data is generated.

**As to your paragraph numbered 3:**

I am not able to respond to this request since I am not certain which data fields your request refers to. If I assume that the fields you are referring to are the ones in the data request for your second paragraph numbered 2, all of our customized data reports include a description of the data fields we use. They may or may not correspond to the field headings you have identified. Without your completed data request form, we cannot specify data fields at this time.

**In response to paragraph number 4:**

You have requested copies of notice forms we use when we remove voters from the "rolls of their status." I am not certain of what notices you are seeking with this request. If you are seeking notices sent to voters who are moved from inactive status to purged status, we do not send notice to those voters. By definition a voter is only on inactive status since we received information from the post office that the voter moved from the address listed on their registration. Voters who do not respond to the second attempt notices do not provide us with an updated address. Once on inactive status these voters do not update their registration or attempt to vote in any election through two congressional election cycles in order to be eligible to be purged. Therefore their voter registration address is invalid and it would serve no purpose to send notice of the purging. In addition, we do not send notices when we move a voter to cancelled status when we receive notice of death. We do send notices when a voter is cancelled due to a felony conviction or when we receive notice that they have registered to vote in another county in Arizona.

If your request is seeking copies of notices we mail to voters on active status when we receive notice from the post office that the voter has relocated, we have seven (7) different notices we mail to voters. Four of those notices are the routine In Pima, Out Pima, 2nd Misc and Temp Away mailings. One is for Jury Return with no forwarding address. The remaining two notices are used during elections when ballots are returned with either an In Pima address or a Temp Away notice.

Michelle Kanter Cohen
Project Vote request
3/3/2014
Page **6** of **6**

**In response to your paragraph 5:**

You have requested that we let you know if no data exists and that if no data exists, that we provide other data "that is closest to the requested information." We have set forth above what data exists and what data is not available in the format requested. No data exists for voters moved to purged status in 2013 since no voters were moved to that status during 2013. There is no other alternative "closest" data to that request.

Our fee for providing copies of instructions and already existing data reports is $0.20 per page. As set forth above, if you wish to receive copies of the instructions and the spread sheet of our notice mailing, the fee for those documents is $4.40. The fee for the 925 page purge list from December 2012 is $185.00. Please note that this report prints automatically when the purge process is run and the report is not available in electronic format. If you wish to receive copies of the form notices sent to voters, the fee is $1.40. If you supply the missing information that prevents us from responding to some of your requests, additional fees may be involved as those clarifications may require additional documents to be copied. See the data request form for fees related to your request in the second paragraph numbered 2.

Please let me know as soon as possible what documents you want provided to you. We must receive payment in advance. Your check made payable to the Pima County Recorder with the specifics of the reports you wish to receive should be sent to my attention.

Sincerely,

*Christopher J Roads*
Chief Deputy Recorder/Registrar of Voters
Pima County Recorder's Office

CJR/                                                                                              14LTR018

# EXHIBIT 7



August 5, 2014

<u>By E-mail</u>

The Honorable Ken Bennett
Secretary of State
1700 W. Washington Street, Fl. 7
Phoenix, AZ 85007-2808

Dear Secretary Bennett:

Project Vote hopes to gain an understanding of your voter list maintenance practices. Pursuant to Section 8(i) of the National Voter Registration Act of 1993 (42 U.S.C. § 1973gg-6(i)) and Arizona Revised Statutes Title 39, Chapter 1, Article 2, we respectfully request the following:

1. A list of all registered voters whose registrations have been canceled between May 1, 2014 and the date you respond to this request, including the following information:
   a. First name
   b. Last name
   c. Middle name or initial (if any)
   d. Suffix (if any)
   e. Address
   f. Date of birth
   g. Arizona-assigned voter ID
   h. Date canceled
   i. Reason canceled
   j. For cancelations based on change-of-address:
      i. An indication of each voter that was sent a notice requesting updated address information, and the date the notice was sent
      ii. An indication of each voter who responded to the notice, and the date of the response
      iii. An indication of each notice that was returned to election officials by means other than the voter responding (e.g., returned-as-undeliverable), what that means of return was, and the date the notice was returned
      iv. An indication of each notice that was not, or has not yet been, returned to election officials
2. A list of all registered voters whose registrations have not been removed but have been sent a notice requesting updated address information between May 1, 2014 and the date you respond to this request, including:
   a. First name
   b. Last name
   c. Middle name or initial (if any)



      d. Suffix (if any)
      e. Address
      f. Date of birth
      g. Arizona-assigned voter ID
      h. The date each notice was sent to a voter
      i. An indication of each voter that responded to the notice, and the date of the response
      j. An indication of each notice that was returned to election officials by means other than the voter responding (e.g., returned-as-undeliverable), what that means of return was, and the date the notice was returned
      k. An indication of each notice that was not, or has not yet been, returned to election officials

3. A sample notice sent to voters that requests updated address information
4. Any records concerning any plans or procedures for list maintenance that you are conducting or instructing local election authorities to conduct between May 1, 2014 and November 4, 2014.

To the extent possible, I prefer to inspect this information in an electronic format, such as Excel files or text files readable by a spreadsheet program. Please note that this information is being requested for nonpartisan, non-commercial research purposes. As a courtesy, I have included a completed copy of the State of Arizona Public Records Request form.

I appreciate your time and assistance, and I look forward to your response. If you have any questions or would like clarification regarding this inquiry, please do not hesitate to contact me.

Sincerely,

_Stephen Mortellaro_

Stephen Mortellaro
Election Counsel*
Project Vote
805 15th Street NW, Suite 250
Washington, DC 20005
(202) 546-4173 ext. 308
smortellaro@projectvote.org

*Licensed to practice law only in Maryland. Practice in D.C. limited to cases in federal court.

# EXHIBIT 8



**KEN BENNETT**
**SECRETARY OF STATE**
**STATE OF ARIZONA**



August 18, 2014

Stephen Mortellaro, Election Counsel
Project Vote
805 15th Street NW, Suite 250
Washington DC 20005

RE: August 5, 2014 Public Records Request for Arizona Voter List Maintenance Records

Dear Mr. Mortellaro:

We are in receipt of your letter dated August 5, 2014 requesting Arizona voter list maintenance records, specifically registrations that have been canceled.

Voter registration records are in the custody of the county recorder. Additionally, the county is responsible for cancellation of voter registration pursuant to A.R.S. § 16-165. We do not possess the information you have requested.

Here is a link to our website, which contains a list of all fifteen county recorders in Arizona if you'd like to request these records from each county: http://www.azsos.gov/election/county.htm.

Please do not hesitate to contact me if you have any questions at (602) 542-6167 or cwerther@azsos.gov.

Sincerely,

*Christina Estes-Werther*

Christina Estes-Werther
State Election Director

# EXHIBIT 9



February 24, 2015

**BY CERTIFIED MAIL**

Honorable Michele Reagan
Arizona Secretary of State
1700 W. Washington Street, Fl. 7
Phoenix, AZ 85007-2808

**Re: Notice of Violation of the National Voter Registration Act**

Dear Secretary Reagan:

Pursuant to Section 11(b) of the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. § 20510(b), we write to notify you that the State of Arizona and its local election authorities are operating in violation of the public records disclosure provisions of Section 8(i) of the NVRA, 52 U.S.C. § 20507(i), by requiring unreasonable payment for disclosure of election records requested by Project Vote, and by failing to maintain and make requested records available as required by Section 8(i).

As a civil and voting rights organization dedicated to increasing civic participation in low-income and minority communities and eliminating barriers to voter registration and voting, we heavily rely on the ability to inspect the requested records to accomplish our mission and to provide effective assistance to our community partners. The requests of local election authorities for payment for such requested records, along with an Arizona statute purporting to authorize such requests for payment, directly contradict the NVRA and are thus invalid as applied to these and other NVRA requests. Further, refusal to maintain and make records available as mandated violates the public disclosure requirements of the statute, and any Arizona state or county procedure contrary to the requirement is also invalid as applied to these and other NVRA requests.

On November 30, 2012, Project Vote sent a letter to the Director of Maricopa County Elections, Karen Osborne requesting information in electronic format including the current voter list for Maricopa County, data relating to requests for early voting ballot and/or absentee ballot applications, and data relating to the processing of early voting ballots and/or absentee ballots.[1] In a December 21, 2012 letter, Randall B. Pennington of the Maricopa County Attorney's Office replied that records related to these requests were available but that pursuant to A.R.S. § 16-168(E) Project Vote would be required to pay $0.01 for each name provided, for a total estimated cost of $49,800.

---

[1] Project Vote requested the same types of data from the Director of Pima County Elections, Brad R. Nelson in another November 30, 2012 letter, but received no reply.

805 15th Street NW • Suite 250 • Washington, DC. 20005
(202) 546-4173 T • (202) 733-4762 F • www.projectvote.org

On February 3, 2014, Project Vote sent a letter to the Director of Pima County Elections, Brad R. Nelson requesting information for inspection in electronic format. The information requested included a list of voters removed from the Pima County rolls in December of 2012 and December of 2013. Christopher J. Roads of the Pima County Recorder's Office replied in a March 3, 2014 letter that the list of voters removed from the rolls could only be provided if Project Vote paid a "programming fee" of $50.00 per hour as well as "costs of particular data fields." For the "costs of particular data fields," the letter referred to a webpage, www.recorder.pima.gov/images/vr_request_form.pdf,[2] which quoted a base cost of $0.10 per name for data provided on disk or CD. The webpage further listed fees for adding the additional requested categories of information—Voting History and Age—at $0.02 per category per name. Project Vote also requested emails containing instructions for conducting list maintenance activities as well as a sample letter for each type of notice used to notify applicants who have been removed from the rolls of their status.

The response from Mr. Roads also indicated that "as a routine business practice, we do not keep the mailing lists of voters who were sent notices of the various types after we have completed processing that note code." The letter continued, "In order to comply with EAC statistical mandates, we keep a spread sheet listing the particular note code, how many notices were mailed, the date of mailing, the target 35 day date of inactivation, the actual date of inactivation, the number of voters inactivated and the number of voters who responded to the notice." The letter further asserted that Project Vote's request for the list of voters who were removed from the rolls in December 2012 and December 2013 "far exceeds the data requirements under [Section 8(i)(1)]."

On August 5, 2014, Project Vote, through its Election Counsel Stephen Mortellaro, requested to inspect Arizona voter list maintenance records through the Secretary of State's office. Specifically, Project Vote requested a list of all registered voters whose registrations have been canceled between May 1, 2014 and the date of the response to the request, as well as a list of registered voters whose registrations have not been removed but have been sent a notice requesting updated address information, within the same time period. The request also sought a sample notice letter sent to voters that requests updated address information, and records concerning planned list maintenance activities. Your office responded on August 18, 2014, indicating only that "Voter registration records are in the custody of the county recorder" and stated, "[w]e do not possess the information you have requested." The response referred Project Vote to the list of all fifteen county recorders for the state. Project Vote attempted to clarify your office's response with a reply on September 5, 2014. As indicated in this September letter, given the statewide requirements of both the Help America Vote Act (HAVA) and the NVRA, Project Vote was confused as to how the Secretary of State's office cannot, at a minimum, have access to or be able to provide the voter list maintenance records Project Vote requested.

Project Vote has not received a response to the September 5 request for clarification.

---

[2] The webpage was last visited February 9, 2015.

805 15th Street NW • Suite 250 • Washington, DC. 20005
(202) 546-4173 T • (202) 733-4762 F • www.projectvote.org

Under the plain language of the NVRA, Arizona must provide the requested records for public inspection free of cost. Section 8(i)(1) of the NVRA (the "Public Disclosure Provision") requires states to "make available for public inspection and, where available, photocopying, at a reasonable cost, *all records* concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. § 20507(i)(1) (emphasis added).

County lists of registered voters, county lists of voters removed from county voter rolls, and county records related to requests for and the processing of early voter ballots and/or absentee ballots all "concern[]the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. § 20507(i)(1). Thus, the NVRA requires Arizona to maintain these records, and then provide the requested records for public inspection free of cost and to allow for photocopying of the requested records at a reasonable cost.

Pima County cites A.R.S. § 16-168(E) as authority for its requests for payment. To the extent, however, that any Arizona law, rule, or regulation is inconsistent with or conflicts with the Public Disclosure Provision of the NVRA, as is the case with A.R.S § 16-168(E) as applied by Pima County, those laws are preempted and thus unenforceable. Under the Elections Clause of the U.S. Constitution, the NVRA, "necessarily supersedes" any state laws or regulations that are "inconsistent" with it. *Arizona v. Inter Tribal Council of Ariz., Inc.*, 133 S. Ct. 2247, 2253-54, 2256-57 (2013) ("The power of Congress over the 'Times, Places and Manner' of congressional elections 'is paramount, and may be exercised at any time, and to any extent which it deems expedient; and so far as it is exercised, and no farther, the regulations effected supersede those of the State which are inconsistent therewith.'" (quoting *Ex parte Siebold*, 100 U.S. 371, 392 (1880)). Thus, any Arizona law, rule, or regulation that is inconsistent with the NVRA will be superseded.

To correct Arizona's violations of the NVRA, we request that your office immediately issue a written directive to all state election officials and to all Arizona County Recorder and Election Offices advising them that the NVRA's Public Disclosure Provision governs "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters," and that such records would include lists of registered voters, lists of voters removed from the voter rolls, voter list maintenance records, and records related to requests for and the processing of early voter ballots and/or absentee ballots. We further request that this written directive state that records governed by the NVRA's Public Disclosure Provision must be maintained for two years and disclosed for public inspection at no cost to the party making the request, and that copies of such records must be provided at reasonable costs, notwithstanding A.R.S. § 16-168(E), or any other Arizona law, rule, or regulation to the contrary. We further request your office to immediately instruct the Maricopa and Pima County Recorders and Election Offices to disclose the information requested by Project Vote as outlined in this letter without imposing fees in violation of the NVRA. We further request you clarify your office's August 18 response to our August 5 request consistent with Project Vote's September 5

- 4 -                                          February 24, 2015

letter, and explain why your failure to maintain the records requested is not inconsistent with the NVRA and HAVA.

Should Arizona not correct these violations within 90 days after your receipt of this notice, we may seek to enforce our rights as permitted by Section 11(b) of the NVRA.

It is imperative that we are able to review these and any other necessary records. We thus appreciate your attention to the concerns raised in this letter and look forward to your reply at your earliest opportunity. To ensure that we have sufficient time to resolve these issues before the expiration of the 90-day notice period, we request a reply within the next 30 days.

Please note that this notice letter is separate and apart from the letter sent on August 6, 2014 regarding violations of Section 7 of the NVRA, 52 U.S.C. § 20506 (formerly 42 U.S.C. § 1973gg-5) from Project Vote, Demos, the Lawyers' Committee for Civil Rights Under Law, and the ACLU of Arizona on behalf of the League of Women Voters of Arizona, the League of United Latin American Citizens and others. This letter does not alter or affect your obligations or time for response to that correspondence.

Sincerely,

Brian Mellor

Brian Mellor
General Counsel
Project Vote
bmellor@projectvote.org
(202)-553-4317

# EXHIBIT 10



July 15, 2015

Via Email and U.S. Mail

Mr. Jim Driscoll-MacEachron
Assistant Attorney General
Office of the Arizona Attorney General
1275 West Washington Street
Phoenix, Arizona 85007-2926
james.driscoll-maceachron@azag.gov

      Re: National Voter Registration Act Request

Dear Mr. Driscoll-MacEachron:

Thank you for your response of April 13, 2015 to Project Vote's letter from Brian
Mellor, General Counsel, dated February 24, 2015, regarding Project Vote's request
for information under the National Voter Registration Act (NVRA).

We are writing, in part, to further explain our contention that the NVRA preempts
A.R.S. 16-168(E), as you requested. As you noted in your letter, the NVRA does not
"bar the implementation of fees to recoup reasonable costs." However, all such fees
must be reasonable. The fees that A.R.S. 16-168(E) purports to permit are not
reasonable under the NVRA because they are grossly out of proportion to any actual
cost that might be incurred in providing records. In particular, the "one cent for
each name for an electronic data medium" cannot conceivably relate to any actual
cost incurred in providing records. With regard to the records of Maricopa County,
for example, the one cent per name results in an estimated fee of $49,800 for the
records we requested.[1] Other states—in keeping with the NVRA—provide similar
records for no fee whatsoever or for the cost of the electronic medium on which
they are provided, and a fee of almost fifty thousand dollars could not possibly be
said to "recoup reasonable costs" for the act of downloading electronic records onto
a CD. A fee—such as the fee purportedly permitted by A.R.S. 16-168(E)—that is a
thousand times greater than any reasonable estimate of costs incurred does not
constitute a "reasonable cost" under 52 U.S.C. § 20507(i)(1). Thus, A.R.S. 16-168(E)
is preempted under these circumstances.

---

[1] Letter from Randall B. Pennington of the Maricopa County Attorney's Office to Catherine
M. Flanagan of Project Vote (Dec. 21, 2012).

805 15TH Street NW • Suite 250 • Washington, DC. 20005
(202) 546-4173 T • (202) 733-4762 F • www.projectvote.org

Nevertheless, in response to your offer to make documents available for inspection to Project Vote, Project Vote would like to request that the following records be made available for inspection under the NVRA:

1. Complete statewide voter registration data maintained in the state voter registration database including both eligible and canceled voters. Availability should allow the data to be sortable and searchable by same fields as would be sortable by and searchable by the election officials and containing at least the following information:
   a. First name
   b. Last name
   c. Middle name
   d. Street number and address
   e. Apartment number
   f. City
   g. State
   h. Zip Code
   i. Mailing Address, if different
   j. Phone number (including area code)
   k. Date of birth or age
   l. Voter ID number (not the ID number provided by the applicant)
   m. Date registered
   n. State or country of birth
   o. Type of proof of citizenship provided, if any
   p. Status of voter (suspended, active, inactive, FED only voter, canceled, not registered, not eligible etc.)
   q. Reason for status of voter (e.g., MOV, MOVA, INVR, NVRA, PROV, etc., see Arizona Election Procedure Manual at 34 (Revised 2014))
   r. All status changes and dates of all status changes to the voter's registration, including the records sufficient to identify the program or activity under which they have been canceled and/or notified or codes sufficient to determine that information
   s. History of correspondence with voters including note codes for any notices sent to voters (such as confirmation notices) including:
      i. Date correspondence was sent
      ii. Reason for correspondence
      iii. An indication of whether the voter responded to the notice and the date of the response
      iv. An indication of each notice that was returned to election officials by means other than the voter responding (e.g., returned as undeliverable), including the date of return
      v. An indication of each notice that was not, or has not yet been, returned to election officials

    t.  History of requests for placement on the Permanent Early Voter List (PEVL), including dates
    u.  Whether applicant has been included on the PEVL
    v.  Whether applicant is currently on the PEVL
    w.  Whether the person requested an early voting ballot and/or absentee ballot
    x.  Information regarding the processing of applications for early voting ballot and/or absentee ballot including the following:
        i.  Date the application was received
        ii.  Date application was entered into the database
        iii.  History of any change in voter registration status based on the application
        iv.  Whether the ballot was returned to the election official
    y.  Voter history, including the following:
        i.  Whether a voter cast a ballot
        ii.  Whether an absentee ballot was cast, and if so, whether it was counted
        iii.  Whether a provisional ballot was cast, and if so, whether it was counted

2. Records sufficient to show the meaning of all codes, fields, and abbreviations used in the above records such as the name and description of fields in the data and a description of each code used in a field; for example, the field named "FName" is First Name, or a "P" in the Status field means "Pending."

3. To the extent kept separately from the database information requested in No. 1 above, records sufficient to show complete information regarding all previously registered voters whose registrations have been canceled or changed to inactive since June 2012 and the reason for cancellation or change to inactive, date of cancellation, program or activity under which they have been cancelled or codes sufficient to determine that information (e.g., NVRA 8(d) mailing, NCOA mailing, Interstate Crosscheck, etc.), and including the information listed in No. 1(a)-(y).

4. To the extent kept separately from the database information requested in No. 1 above, records sufficient to show all voter registration applicants who were not added to the list of eligible voters for all elections, including the information requested above No. 1(a)-(y).

5. A sample letter for each type of notice used to notify persons of their change in voter registration status.

6. All written policies, manuals, or other guidance provided to Secretary of State staff, contractors, election officials, or other relevant persons regarding

the processing of voter registration applications and preparation of voter rolls. Records should be sufficient to determine the methods and means of how voters were assigned to a particular code, including matching criteria used. Project Vote requests these materials to understand how and why each applicant is assigned the stated reasons for rejection or cancelation, as well as circumstances under which changes are made in the database fields.

7. To the extent not included in No. 6 above, all written policies, manuals, or other guidance utilized to conduct list maintenance activities at the state or county level. Records should be sufficient to determine the methods and means of how voters were assigned to a particular code, including matching criteria used. To the extent any of this information is not maintained by the state, please make it available from county records.

8. Any and all lists of voter registrations which were provided by the state election official to county election officials for the purpose of the county either making any change in status or investigating the record for change in status, along with any accompanying guidance, correspondence, or other document related to use of those lists for such purpose. Records provided should include, but not be limited to, those related to use for list maintenance purposes of the Interstate Crosscheck Program administered by the state of Kansas.

9. All correspondence provided to or received from county officials related to the information in No. 8, above.

10. To the extent any of the above information is not maintained in the state voter registration database or other records maintained at the state level, please make this information available from county records.

The documents that the NVRA requires to be made available to the public should be available to the public, including Project Vote, in the same way available to election officials, with the exception of the limited information (such as full social security numbers) that is legitimately confidential. We request this information in good faith and in an effort to fulfill the goals of the NVRA, which is to make it easier for all Americans, including Arizonans, to vote.

Please confirm when the above-requested information will be made available to Project Vote. If you take the position that any of this information is not maintained or is otherwise unavailable to Project Vote, please indicate specifically the information that will not be made available and the specific reason or reasons for that unavailability.

Sincerely,

Michelle E. Kanter Cohen
Election Counsel
Project Vote
202-546-4173 x 309
mkantercohen@projectvote.org

# EXHIBIT 11



**MARK BRNOVICH**
**ATTORNEY GENERAL**

OFFICE OF THE ARIZONA ATTORNEY GENERAL

SOLICITOR GENERAL'S OFFICE

**JIM DRISCOLL-MACEACHRON**
**ASSISTANT ATTORNEY GENERAL**
**DIRECT NO. (602) 542-8137**
JAMES.DRISCOLL-MACEACHRON
@AZAG.GOV

August 12, 2015

Michelle E. Kanter Cohen
Election Counsel
Project Vote
805 15th Street NW, Suite 250
Washington, DC 20005

   Re: National Voter Registration Act Request

  Dear Ms. Kanter Cohen,

  We are in the process of gathering information for inspection that is responsive to your July 15, 2015 requests. The Secretary's Office has been working diligently to gather this information despite the wide number of other duties that the Secretary's Office must perform. This is a time-consuming process, and it must include sufficient time for review and redaction to protect any confidential information and/or privacy interests. That said, we are making significant progress. We anticipate having a majority of the information available for inspection by early-to-mid September. As we approach September, we will provide potential dates for inspection, and we will let you know if there are any significant categories of information that will not yet be ready for inspection, as well as a date by which those categories will be available for inspection.

  Arizona law requires requests for voter registration and election information be handled by county recorders. A.R.S. § 16-168(K). As a courtesy, however, the Secretary will provide access to the majority of the information for inspection at the Secretary of State's Office at 1700 W. Washington Street. The Secretary's Office is on the 7th floor, and a computer will be provided on which you may inspect relevant NVRA records in an electronic format. For information located at county offices, the Secretary's Office will assist in arranging inspection at the relevant county offices. We will provide you additional details regarding what information will be available at the Secretary's Office and what will be available at county offices when we provide you possible dates for inspection.

  While the Secretary's Office is endeavoring to provide full and complete access to responsive information, there is some information that the Secretary cannot provide. By state

Ms. Michelle Kanter Cohen
August 12, 2015
Page 2

law, election officers may not disclose registration information for individuals protected under an order of protection or under injunction against harassment, and election officials may not disclose records of individuals in the address confidentiality program. A.R.S. § 16-153(J). Similarly, Arizona law protects the addresses and telephone numbers of individuals who petition a court to protect this information in their voting record because they believe that either their life and safety or the life and safety of another person is in danger and that sealing this information will reduce that danger. A.R.S. § 16-153(A)-(E). Accordingly, information protected under these statutes will not be produced for inspection.

Your request also includes private information on every individual who has been registered to vote in the relevant time period. We must balance the privacy of those individuals against the interest in disclosure here. As an initial matter, we have determined that we will provide addresses, but we will not provide telephone numbers. Individuals have a privacy interest in their telephone numbers, and a telephone number is not sufficiently connected to the purposes of disclosure under NVRA to disregard the privacy interest involved. Similarly, we will provide the year of birth, but not the full birthdate.

As we continue to gather information responsive to your requests, we will let you know if there are any other categories of information that will not be produced for inspection. It is our intent to respond as fully as possible to these requests for NVRA information, and we appreciate your patience as we gather the information necessary to do so. We will continue to keep you updated on our progress, and we will provide specific dates as soon as we are able to do so. If you have any questions in the interim, please do not hesitate to contact me.

Sincerely,

Jim Driscoll-MacEachron
Assistant Attorney General

#4592151

# EXHIBIT 12



| | | |
|---|---|---|
| **MARK BRNOVICH**<br>**ATTORNEY GENERAL** | **OFFICE OF THE ARIZONA ATTORNEY GENERAL**<br>**SOLICITOR GENERAL'S OFFICE** | **JIM DRISCOLL-MACEACHRON**<br>**ASSISTANT ATTORNEY GENERAL**<br>**DIRECT NO. (602) 542-8137**<br>JAMES.DRISCOLL-MACEACHRON<br>@AZAG.GOV |

September 21, 2015

Brian Mellor
General Counsel
Project Vote
805 15th Street NW, Suite 250
Washington, DC 20005
bmellor@projectvote.org

   Re: National Voter Registration Act Request

Dear Mr. Mellor,

   Thank you for speaking with me today.  Ms. Kanter Cohen and I had discussed the proposed NVRA inspection by phone, and, at this point, I would like to propose some dates for the inspection at the Secretary's Office in Phoenix.  As discussed with Ms. Kanter Cohen, the information from the database will be available either through the database directly, or, if you prefer, imported into an Access database.  There will be additional responsive documents available for inspection electronically as well.

   Many staff members of the Secretary's Office will be leading election officer certification programs at various locations around the State over the next several weeks, which limits the potential dates for the inspection in the near term.  Nevertheless, we are prepared to propose the following dates: September 25, September 29, or September 30.  We understand that these dates are fast approaching—and that, with Ms. Kanter Cohen on leave, an inspection in the next two weeks may not be practicable.  Nevertheless, we wanted to provide dates as early as possible for inspection.  Please let us know if any of these dates work for you—or if we should propose additional dates.

   As I discussed with Ms. Kanter Cohen, the Secretary's Office is bound by statute not to produce full birthdate information—but it will produce the birth year for responsive records.  *See* A.R.S. § 16-168(F).  Additionally, we will not produce telephone numbers because of the privacy interests of the individuals who will be included in the millions of records you've requested to inspect.  We remain willing to discuss producing telephone numbers for narrower sets of records if you can provide an interest that counterbalances the privacy interests of the

Mr. Brian Mellor
September 21, 2015
Page 2

individuals whose numbers would be disclosed.  Finally, we reserve the right to redact confidential and/or private information from non-database records as necessary.  Based on our review of the responsive records thus far, this will likely include only minimal redaction.

Turning to request 1, the Secretary's Office can produce for inspection all responsive information to request 1(a)-(n), (p)-(q), and (v)-(w).[1]  The Secretary's Office can produce for inspection whether individuals submitted proof of citizenship in response to request 1(o), but you will need to inspect records at the county level to determine the type of proof of citizenship submitted.  For requests 1(r)-(s), and (x)-(y), the Secretary's Office can produce all responsive information for every county except for Maricopa and Pima.  Information responsive to those requests for Maricopa and Pima County will need to be inspected at the county level.  There is no information responsive to request 1(t) in the database.

For the remaining requests, the Secretary's Office will produce information for inspection responsive to requests 2-3 and 5-9.  Additional information responsive to requests 2-3, 5-7, and 9 will need to be inspected at the county level.  Information responsive to requests 4 and 10, to the extent that it exists, is available for inspection only at the county level.

The Secretary's Office remains willing to facilitate inspections at the county level as necessary.  Please let us know if and when you would like to arrange county inspections.  And if you have any additional questions, please do not hesitate to contact us.

Sincerely,

Jim Driscoll-MacEachron
Assistant Attorney General

#4654046 v2

---

[1] For requests 1(v) and (w), the information is currently available only when querying the database for individual voter information.  An employee of the Secretary's Office will be present at the inspection to run queries to access this information on your behalf.

# EXHIBIT 13



November 2, 2015

<u>Via Email</u>

Mr. Jim Driscoll-MacEachron
Assistant Attorney General
Office of the Arizona Attorney General
1275 West Washington Street
Phoenix, Arizona 85007-2926
james.driscoll-maceachron@azag.gov

Re: National Voter Registration Act Request

Dear Mr. Driscoll-MacEachron:

The following is my response to your request for records from the database and
other sources Project Vote requests be available for inspection.

1. Project Vote would like the database fields listed below available for inspection.
   The fields correspond with available information, according to your letter, and
   also include a request for additional date, status, demographic, and action fields
   (see items m, n, and o).
   a. First name
   b. Last name
   c. Middle name
   d. Street number and address
   e. Apartment number
   f. City
   g. State
   h. Zip Code
   i. Mailing Address, if different
   j. Phone number (including area code)
   k. Date of birth
   l. Voter ID number (not the ID number provided by the applicant)
   m. Date Fields
       i. All fields formatted as date, including to the extent the field
          exists:
          1. Date application submitted,

2. Date that would determine if the application was submitted before the books were closed,
3. Date the application was not approved, date registered, change of status date, and
4. Cancellation date (date the voter was no longer considered on the voting roll and would have had to vote provisionally if the voter appeared at the polls).

n. Status /Action Fields –
    i. All fields that contain a status or action code, including to the extent the field exists:
        1. Current Status,
        2. Reason for Current Status,
        3. Voting History, and
        4. Past Activities – Letters sent, Responses to Letter.

o. Demographic Fields -
    i. All fields that contain demographic information including, to the extent the field exists:
        1. Age,
        2. Race,
        3. Gender, and
        4. Ethnicity.

p. State or country of birth
q. Status of voter (suspended, active, inactive, FED only voter, canceled, not registered, not eligible etc.)
r. Reason for status of voter (e.g., MOV, MOVA, INVR, NVRA, PROV, etc., see Arizona Election Procedure Manual at 34 (Revised 2014))
s. Whether the person requested an early voting ballot and/or absentee ballot

2. Project Vote would like the data listed below made available for inspection.

    a. All previously registered voters whose registrations have been canceled or changed to inactive since June 2012, and the reason for cancellation or change to inactive, date of cancellation, program or activity under which they have been cancelled or codes sufficient to determine that information (e.g., NVRA 8(d) mailing, NCOA mailing, Interstate Crosscheck, etc.), and including the information listed in No. 1(a)-(q).
    b. All post-October 2013 voter registration applicants who were not added to the list of eligible voters.
    c. All registered voters, and
    d. All records received from the Kansas Secretary of State as part of the Interstate Cross Check Project.

I intend to inspect the data made available for inspection to determine whether applicants have been omitted from the list of eligible rolls, or removed from those rolls, because of practices that fail to comply with federal elections laws.

I need to be able to manipulate the data to:

    i.    Compile data to determine the impact of election official practices on specific demographics, jurisdictions, zip codes, precincts and other characteristics,

    ii.    Match data with other lists, such as the list of persons provided by the Kansa Secretary of State as part of the Interstate Cross Check Project, and

    iii.    Analyze data to determine if there are anomalies in the way demographic, geographical, or other sub sets of applicants/registered voters are processed, approved or cancelled that flag a policy or practice that may not comply with federal laws.

3. Records sufficient to show the meaning of all codes, fields, and abbreviations used in the above records such as the name and description of fields in the data and a description of each code used in a field; for example, the field named "FName" is First Name, or a "P" in the Status field means "Pending."

4. A sample letter for each type of notice used to notify persons of their change in voter registration status.

5. All written policies, manuals, or other guidance provided to Secretary of State staff, contractors, election officials, or other relevant persons regarding the processing of voter registration applications and preparation of voter rolls. Records should be sufficient to determine the methods and means of how voters were assigned a particular code, including matching criteria used. Project Vote requests these materials to understand how and why each applicant is assigned the stated reasons for rejection or cancelation, as well as circumstances under which changes are made in the database fields.

6. To the extent not included in No. 5 above, all written policies, manuals, or other guidance utilized to conduct list maintenance activities at the state or county level.  Records should be sufficient to determine the methods and means of how voters were assigned to a particular code, including matching criteria used.  To the extent any of this information is not maintained by the state, please make it available from county records.

7. Any and all lists of voter registrations which were provided by the state election official to county election officials for the purpose of the county either making any change in status or investigating the record for change in status, along with

any accompanying guidance, correspondence, or other document related to use of those lists for such purpose.  Records provided should include, but not be limited to, those related to use for list maintenance purposes of the Interstate Crosscheck Program administered by the state of Kansas.

8.  All correspondence provided to or received from county officials related to the information in No. 5 and No. 6, above.

Thank you for working with me to ensure a successful inspection.

Sincerely,

*-S-*

Brian Mellor
General Counsel
Project Vote
202-553-4317
bmellor@projectvote.org

# EXHIBIT 14



**MARK BRNOVICH**
ATTORNEY GENERAL

OFFICE OF THE ARIZONA ATTORNEY GENERAL

SOLICITOR GENERAL'S OFFICE

**JIM DRISCOLL-MACEACHRON**
ASSISTANT ATTORNEY GENERAL
DIRECT NO. (602) 542-8137
JAMES.DRISCOLL-MACEACHRON
@AZAG.GOV

November 4, 2015

Brian Mellor
General Counsel
Project Vote
805 15th Street NW, Suite 250
Washington, DC  20005
bmellor@projectvote.org

      Re:    National Voter Registration Act Request

Dear Mr. Mellor,

      We received your additional request for information on November 2, 2015.  We have reviewed the request, and we should be able to produce records for inspection that are responsive to many of your requests.

      As an initial matter, I do want to correct two inadvertent omissions from my September 21, 2015 letter.  We are bound by statute to keep certain information confidential, and, while I referenced A.R.S. § 16-168(F)'s prohibition on disclosing full birth date information, I mistakenly omitted A.R.S. § 16-168(F)'s prohibition on disclosing the state and/or country of birth.  With that in mind, please refer to A.R.S. § 16-168(F) for the full list of statutory prohibitions.  Similarly, while I believe I discussed secured voters with Ms. Kanter Cohen, I see that my previous letter did not specifically reference secured voters.  Voter registration information for these voters is protected from disclosure under A.R.S. § 16-153.  As such, secured voter records will not be available for inspection.  Those records, however, are less than 0.1% of the records in the database, so this will not materially affect the inspection.  Otherwise, the database records in the Secretary's office will be available as described in my September 21, 2015 letter.  The non-database records in the Secretary's Office that are responsive to your requests will be available electronically for inspection as well.  Records since July, 2013 will be in folders identified by the request for your inspection, redacted to comply with A.R.S. § 16-168(F).

      Turning to the new requests in your letter, you will have access to many of the fields in the state database that are formatted as dates.  This includes the date of registration, which will reflect the date the voter registration form was signed.  It will also include the effective date of

Mr. Brian Mellor
November 4, 2015
Page 2

registration, which reflects the last date the voter submitted a voter registration form. Information regarding the date of status changes and cancellation will also be available. There is, however, no field for the date books are closed on an election. That information is part of the parameters for specific elections; it is not associated with voter records in the database. Finally, as stated above, you will not have access to date fields associated with secured voters.

You will also have access to fields in the state database that display the status of non-secured voters. This will include the current status of voters, and where available, the reason for current status, voting history, and past activities. As explained in my September 21 letter, additional information on status changes for Maricopa and Pima County is available at their county offices.

With the exception of age, the state database does not track demographic information such as race, gender, or ethnicity. You will have access to records that reflect the birth year of non-secured voters, and you will be able to sort records in a manner that allows you to group voters by age. However, as set out in A.R.S. § 16-168(F) and described in my previous letter, we are bound by statute not to disclose full birth date information.

You have also requested access to information sorted to display registered voters whose registration has been canceled or changed to inactive since June 2012, post-October 2013 applicants who were not added to the list of eligible voters, and all registered voters. The database does allow you to sort information in a manner that will display the information requested. As a practical matter, the database does have some difficulty displaying extremely large numbers of records at the same time, and there are more than three million registered voters in the database. We generally advise breaking searches down to smaller groups in order to facilitate inspection.

You also requested records received from Kansas as part of the Interstate Cross Check Project. Those records are not kept in the database; however, you will have the ability to inspect records related to the Interstate Cross Check Project separately.

With regard to your request to manipulate the data, we reiterate that the records are being provided for inspection. To the extent that you wish to search and sort the records in the database, we will assist you in doing so. We believe we will be able to accommodate many of your requests through the search and sorting tools available; however, the inspection is limited to the records in the database. While we do not expect this to present any significant problems, we did want to make this limitation clear given your references to manipulating, compiling, and analyzing data.

We look forward to your inspection beginning this Friday at 9:00 a.m. We will have staff available to assist with the inspection. Because the database includes live voter data and because we must ensure that confidential records and/or information is not inadvertently disclosed, an employee of the Secretary's Office will be responsible for inputting queries into the database.

Mr. Brian Mellor
November 4, 2015
Page 2


You will then be able to inspect the responsive records in the database.  I will also be present to assist with any questions you may have.

      If you have any questions before Friday, please do not hesitate to contact me.  Otherwise, I look forward to meeting you on Friday.

                    Sincerely,

                    Jim Driscoll-MacEachron
                    Assistant Attorney General

4750070

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

# Civil Cover Sheet

This automated JS-44 conforms generally to the manual JS-44 approved by the Judicial Conference of the United States in September 1974. The data is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. The information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is authorized for use only in the District of Arizona.

**The completed cover sheet must be printed directly to PDF and filed as an attachment to the Complaint or Notice of Removal.**

Plaintiff(s): **Project Vote, Inc.**

Defendant(s): **Secretary of State, State of Arizona, Michele Reagan, in her official capacity ; County Recorder, Maricopa County, Helen Purcell, in her official capacity ; County Reorder, Pima County, F. Ann Rodriguez, in her official capacity**

County of Residence: Outside the State of Arizona

County of Residence: Maricopa

County Where Claim For Relief Arose: Maricopa

Plaintiff's Atty(s):

Defendant's Atty(s):

**Cynthia Ricketts** ( Project Vote, Inc. )
**Sacks, Ricketts & Case LLP**
**2800 N Central Ave, Ste. 1230**
**Phoenix, Arizona  85004**
**6023853370**

**Allison Kierman** ( Project Vote, Inc. )
**Sacks, Ricketts & Case LLP**
**2800 N Central Ave, Ste. 1230**
**Phoenix, Arizona  85004**
**6023853370**

**Natalya Ter-Grigoryan**
**Sacks, Ricketts & Case LLP**
**2800 N Central Ave, Ste. 1230**
**Phoenix, Arizona  85004**
**6023853370**

II. Basis of Jurisdiction:          **3. Federal Question (U.S. not a party)**

III. Citizenship of Principal
Parties (Diversity Cases Only)

      Plaintiff:- **5 Non AZ corp and Principal place of Business outside AZ**
     Defendant:- **1 Citizen of This State**

IV. Origin :          **1. Original Proceeding**

V. Nature of Suit:          **441 Voting**

VI.Cause of Action:          **52 U.S.C. § 20510(b) and 42 U.S.C. § 1983 to redress the deprivation,
under color of state law, of rights secured by federal statutes and the
Constitution of the United States.**

VII. Requested in Complaint

     Class Action:**No**
    Dollar Demand:**injunctive relief**
     Jury Demand:**No**

VIII. This case **is not related** to another case.

**Signature:  Allison L. Kierman**

  **Date:  4/25/16**

**If any of this information is incorrect, please go back to the Civil Cover Sheet Input form using the *Back* button in your
browser and change it. Once correct, save this form as a PDF and include it as an attachment to your case opening
documents.**

**Revised: 01/2014**

| | | |
|---|---|---|
| 1 | Name | Allison L. Kierman |
| 2 | Bar # | 024414 |
| | Firm | Sacks, Ricketts & Case LLP |
| 3 | Address | 2800 N. Central Ave., |
| 4 | | Suite 1230 |
| 5 | | Phoenix, AZ 85004 |
| | Telephone | (602) 385-3370 |
| 6 | | |

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Project Vote, Inc.

   Plaintiff,

   vs.

Michele Reagan, in her official
capacity as Secretary of State, et al.
   Defendant.

)
)
)
)
)
)
)
)
)
)
)
)

**Case No.**

**Corporate Disclosure Statement**

This Corporate Disclosure Statement is filed on behalf of Project Vote, Inc.
in compliance with the provisions of: *(check one)*

[✓] Rule 7.1, Federal Rules of Civil Procedure, a nongovernmental corporate party to an action in a district court must file a statement that identifies any parent corporation and any publicly held corporation that owns 10% or more of its stock or states that there is no such corporation.

[ ] Rule 12.4(a)(1), Federal Rule of Criminal Procedure, any nongovernmental corporate party to a proceeding in a district court must file a statement that identifies any parent corporation and any publicly held corporation that owns 10% or more of its stock or states that there is no such corporation.

[ ] Rule 12.4(a)(2), Federal Rule of Criminal Procedure, if an organizational victim of alleged criminal activity is a corporation the government must file a statement identifying the victim and the statement must also disclose the information required by Rule 12.4(a)(1).

**The filing party hereby declares as follows:**

[✓] No such corporation.

[ ] Party is a parent, subsidiary or other affiliate of a publicly owned corporation as listed below. *(Attach additional pages if needed.)*

_____Relationship_____

[ ] Publicly held corporation, not a party to the case, with a financial interest in the outcome. *List identity of corporation and the nature of financial interest. (Attach additional pages if needed.)*

_____Relationship_____

[ ] Other(please explain)

_____

_____

A supplemental disclosure statement will be filed upon any change in the information provided herein.

Dated this ___27th___ day of ___April_____, __2016___.


s/Allison L. Kierman
_____
Counsel of Record


Certificate of Service:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Arizona

|  |  |
|---|---|
| Project Vote, Inc. _____ *Plaintiff(s)* v. Michele Reagan, in her official capacity as Secretary of State, State of Arizona; Helen Purcell, in her official capacity as County Recorder of Maricopa County; F. Ann Rodriguez, in her official capacity _____ *Defendant(s)* | ) ) ) ) ) ) )     Civil Action No. ) ) ) ) ) ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   Helen Purcell
c/o Maricopa County Clerk of the Board
301 W. Jefferson, 10th Floor
Phoenix, AZ 85003

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Cynthia A. Ricketts
Sacks, Ricketts & Case, LLP
2800 N. Central Ave., Suite 1230
Phoenix, AZ 85004

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____            _____
                                                                     *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.


Date: _____                              _____
                                                              *Server's signature*

                                                              _____
                                                              *Printed name and title*

                                                              _____
                                                              *Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Arizona

| | |
|---|---|
| Project Vote, Inc.<br><br>*Plaintiff(s)*<br><br>v.<br><br>Michele Reagan, in her official capacity as Secretary of State, State of Arizona; Helen Purcell, in her official capacity as County Recorder of Maricopa County; F. Ann Rodriguez, in her official capacity<br><br>*Defendant(s)* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No. |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Michele Reagan
c/o Mark Brnovich, Arizona Attorney General
1275 W. Washington Street
Phoenix, AZ 85007-2926

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:      Cynthia A. Ricketts
Sacks, Ricketts & Case, LLP
2800 N. Central Ave., Suite 1230
Phoenix, AZ 85004

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❑ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❑ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❑ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❑ I returned the summons unexecuted because _____ ; or

❑ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.


Date: _____                    _____
                                                    *Server's signature*

                                                    _____
                                                    *Printed name and title*


                                                    _____
                                                    *Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Arizona

| | )
|---|---|
| | ) |
| | ) |
| Project Vote, Inc. | ) |
| *Plaintiff(s)* | ) |
| v. | )   Civil Action No. |
| Michele Reagan, in her official capacity as Secretary of State, State of Arizona; Helen Purcell, in her official capacity as County Recorder of Maricopa County; F. Ann Rodriguez, in her official capacity | ) |
| *Defendant(s)* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   F. Ann Rodriguez
c/o Pima County Clerk of the Board
130 W. Congress, 5th Floor
Tucson, AZ 85701

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Cynthia A. Ricketts
Sacks, Ricketts & Case, LLP
2800 N. Central Ave., Suite 1230
Phoenix, AZ 85004

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)*

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*




My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .


I declare under penalty of perjury that this information is true.


Date: _____                        _____
                                                          *Server's signature*

                                                          _____
                                                          *Printed name and title*


                                                          _____
                                                          *Server's address*

Additional information regarding attempted service, etc: