# EXHIBIT 1

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into among Project Vote, Inc. ("Project Vote") and the Maricopa County Recorder's Office (hereinafter collectively referred to as "the Parties"), through their authorized representatives.

## RECITALS

A.    Project Vote is a national, non-partisan voting rights advocacy organization that seeks to ensure that every eligible citizen can register, vote, and cast a ballot that counts.

B.    On April 27, 2016, Project Vote filed a complaint for declaratory and injunctive relief, as well as costs and fees, in U.S. District Court for the District of Arizona against (1) Michelle Reagan, in her official capacity as Secretary of State of the State of Arizona ("Defendant Reagan"); (2) Helen Purcell,[1] in her official capacity as County Recorder of Maricopa County; and (3) F. Ann Rodriguez, in her official capacity as County Recorder of Pima County ("Defendant Rodriguez") (collectively, "Defendants") (captioned as *Project Vote v. Reagan, et al.*, Case No. CV-16-01253-DLR-PHX (D. Ariz.), hereinafter the "Civil Action").

C.    In the Civil Action, Project Vote alleges that Defendants violated Section 8 of the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. §§ 20501-20511, and the Fourteenth Amendment to the United States Constitution.

D.    This Agreement pertains solely to the Maricopa County Recorder's Office ("the Recorder's Office") and does not relate to or resolve the Civil Action as against other Defendants, specifically the Secretary of State or the County Recorder of Pima

---

[1] Adrian Fontes replaced Helen Purcell as the County Recorder of Maricopa County in January 2017.

County.   This Agreement in no way changes the status of Project Vote's ongoing litigation against Defendants Reagan and Rodriguez.

F.        To settle and resolve the claims between Project Vote and the Recorder's Office, and in consideration of the mutual promises and obligations of this Agreement, the Parties agree and covenant as follows:

## DEFINITIONS

For the purpose of this Agreement, the following definitions apply:

1.        "Database" is any electronic storage facility, program, or system maintained by the Recorder's Office.   This includes, but is not limited to, the VRAS system used by the Recorder's Office.

2.        "Applicant" is any individual who has submitted an application to register to vote in Maricopa County.

3.        "Electronic Data" is information that (1) concerns the currency, accuracy, or both of the official lists of eligible voters and (2) is contained in any Database.

4.        "Identifying Information" includes (but is not limited to) the voter's or Applicant's: state-assigned Voter ID number; full name (all name fields); residential address; mailing address; county of residence; birth year; phone number(s); electronic mail address(es); demographic information collected from the voter or Applicant, including (but not limited to) his or her race or ethnicity; whether the voter needs assistance with voting, if indicated; the voter's or Applicant's precinct information; the voter's or Applicant's political party identification; and the voter or Applicant's status (*e.g.*, active, inactive, federal ballot only, rejected, etc.).

5.      "Field" shall mean any category of information used to characterize an individual Record in any Database.

6.      "Code" shall mean any entry corresponding to a particular Field for an individual Record.  This includes, but is not limited to, terms or phrases that address the status of a voter application or registration.

7.      "Record" shall mean information associated with a single voter or Applicant contained in the Database.  The scope of the Records responsive to a request shall be determined by the date range specified on a request.  In no event, however, shall a Record be responsive to a request if (1) it was created prior to February 24, 2013 (two years prior to Project Vote's February 24, 2015 Notice Letter), and (2) it has been unaltered from February 24, 2013 to the date of the request response.

## TERMS AND CONDITIONS

1.      Current Voter Roll.  The Recorder's Office will, upon request, make available to the public an electronic copy in a commercially available format (such as .csv or .txt) of the current voter roll for Maricopa County.  Furthermore, the Recorder's Office will provide Project Vote with such an electronic copy of the current voter roll for Maricopa County and certain historical voter rolls, as requested by Project Vote and subject to a reasonable timeframe to produce the historical records.

2.      Additional Voter Registration Records.  The Recorder's Office will, upon request, make available to the public all current voter registration records subject to the NVRA.  The minimal records responsive to such a request are outlined below.  Furthermore, the Recorder's Office will provide Project Vote with all voter registration records subject to the NVRA since February 24, 2013.  The Recorder's Office may

withhold or restrict the provision of confidential information consistent with Paragraph 7 of this Agreement and may assess reasonable costs consistent with the NVRA and Paragraph 9 of this Agreement.

3.    The Recorder's Office agrees that the information it will provide to the public will include, where requested:

a.  All NVRA-covered Electronic Data maintained by the Recorder's Office in any then-current Database. As of the date of this Agreement, this includes the VRAS database and will include the "Voter File Layout" and the "Voted File." With respect to Project Vote, this will also include all Electronic Data in any Database used by the Recorder's Office since February 24, 2013.

b.  All Identifying Information, as defined above, maintained by the Recorder's Office.

c.  The full history maintained by the Recorder's Office for any application received in the two years prior to a given request, including applications that did not result in adding the Applicant to the voter rolls as eligible to vote in all elections in the voter's jurisdiction. The history will include all key dates in the Recorder's Office's handling these applications, including the date of creation or entry, the date and nature of any status changes and the reason for such change, and where appropriate the reason the Applicant was not added to the voter rolls for voting in all elections in the voter's jurisdiction. This history will be provided in electronic format.

d.  All information maintained by the Recorder's Office, regardless of if maintained in a Database, showing or discussing the status of all Applicants or voters including those whose current status is anything other than currently permitted to vote in all elections in the jurisdiction. This will include rejection, cancellation, or suspension of any application or the removal of any former voter from the voter rolls. The information provided to Project Vote will include but is not limited to the method of application (*e.g.*, electronic, paper state form, or paper federal form), the status of the Applicant or voter, the basis for such status, to the extent not already covered above, and if not reasonably apparent from the record provided, the Recorder's Office will provide supplemental explanation of this disposition. The information provided to the public on request will also include all memoranda, comments, or other notations accompanying the application or otherwise part of the file for any rejected, cancelled, suspended or otherwise ineligible Applicant or voter. To the extent the issue is related to a data "match" between information maintained or provided by a source other than the voter registration application itself, the Recorder's Office will indicate the specific type of information it sought

4

to verify (*e.g.,* Social Security Number or driver's license number), the specific nature of the match or non-match based on what match criteria, and the source data. Such information must include, but is not limited to, status changes or actions taken based on information from the Interstate Cross Check program.

e. All early voting, absentee ballot, or provisional ballot requests received by the Recorder's Office, identifying the date of request, the subsequent handling and current status of those requests, and the current status of those ballots (e.g., accepted for tabulation, rejected, etc.).

f. All correspondence between the Recorder's Office and voters or Applicants, both to and from, including but not limited to correspondence on information required for a voter to remain on the rolls and information required for an Applicant to be added to the voter rolls. To the extent any form or template letters are used, the Recorder's Office will provide copies of all such letters and records of their use and will provide electronic data regarding which such letters were sent to voters or Applicants, and when they were sent. For any requests for information from a voter or Applicant, the Recorder's Office will provide the responsive information submitted.

g. The policies and procedures used by the Recorder's office relating to any Database, the maintenance of the voter rolls, the handling of registration applications, and communication with voters or Applicants. For any Database, this will include an explanation of the Database, its function, any fields, codes, tables and/or interactions with other databases for which the label used or information provided is not reasonably sufficient to determine its meaning and use. This may include any manuals, guides, or other similar materials used by the Database operators.

h. To the extent not included in information provided pursuant to the above paragraphs, the Recorder's Office will provide to the public on request any information provided to the Recorder's office by the Secretary of State related to use of the Interstate Crosscheck Program, including lists of voters, and all records related to each listed voter registrant's registration concerning actions taken with regard to that information.

i. Any materials under this Paragraph 3 or information not available electronically may be produced in accordance with reasonable terms as agreed to by the requestor and the Recorder's Office.

4. <u>Electronic Copies</u>. The Recorder's Office will provide Project Vote with an electronic copy of the Electronic Data and all other voter registration Records using the format in which the records are currently stored or the closest feasible approximation

readable by Project Vote, as agreed to by the Parties, with the exception of materials referenced in 3(i), which may be produced in accordance with that paragraph.

5.   <u>Voter and Status History</u>.   The Recorder's Office will provide Project Vote with an electronic copy of the voting and registration status history for any voter registered at any time since February 24, 2013, including any voter later moved to an ineligible status or removed from the voter rolls.

6.   <u>Database Reports</u>.   The Recorder's Office will provide Project Vote with copies of reports it has provided to the Secretary of State pursuant to Arizona Revised Statute Title 16 Section 173.

7.   <u>Confidential Information</u>.   Certain information will be treated as confidential, and where applicable not disclosed, under Arizona Revised Statute Title 16 Sections 153, 168(F), and Title 41 Section 161, *et seq*., consistent with the following:

   a. For a Record subject to protection under Title 16 Section 153, the Recorder's Office shall redact the residential address, telephone number, and voting precinct number before providing it to Project Vote.

   b. For a Record subject to protection under Title 16 Section 168(F), the Recorder's Office agrees that Project Vote is acting "for election purposes." Any information provided to Project Vote may be subject to commercially reasonable data protection measures or redaction as agreed to by the parties.

   c. For a Record subject to protection under Title 41 Section 161, *et seq.*, the Recorder's Office shall redact any address or telephone number before providing it to Project Vote.

8.   <u>Public Access</u>.   The Recorder's Office will publish information regarding the public's right to access these records (as set forth in Paragraph 2, above) on its website, including the corresponding reasonable cost schedule.

9.   <u>Maximum Fees for Production</u>.   The Recorder's Office will provide electronic copies of all the above records at no more than a reasonable cost, consistent

with this paragraph.  The maximum fees that may be charged will depend on the volume of records requested.  In the event the maximum fees are superseded by a future statutory change, such statutory provisions will not apply unless all Parties agree the newly proposed scheme (i) is consistent with the NVRA's reasonable cost requirements and (ii) does not significantly increase costs to Project Vote or any future requestor.  Maximum Fees for a request (including any update to a prior request or new version of previously requested information):

    a.  For one to one hundred twenty-four thousand nine hundred ninety-nine records, ninety-three dollars seventy-five cents plus $0.0005 per record.

    b.  For one hundred twenty-five thousand to two hundred forty-nine thousand nine hundred ninety-nine records, one hundred fifty-six dollars twenty-five cents plus $0.000375 per record.

    c.  For two hundred fifty thousand to four hundred ninety-nine thousand nine hundred ninety-nine records, two hundred three dollars thirteen cents plus $0.00025 per record.

    d.  For five hundred thousand to nine hundred ninety-nine thousand nine hundred ninety-nine records, two hundred sixty-five dollars sixty-three cents plus $0.000125 per record.

    e.  For one million or more records, three hundred twenty-eight dollars thirteen cents plus $0.0000625 per record.

10.    <u>Attorney's Fees</u>.  In the interest of settlement and subject to the full and complete cooperation agreed to by the Recorder's Office, Project Vote agrees not to pursue attorneys' fees or litigation costs against the Recorder's Office.  Each of the Parties will bear its own attorneys' fees and costs with respect to the claims against the Recorder's Office.

11.    <u>Commitment to Public Disclosure Provision Compliance</u>.  The Recorder's Office agrees to modify its policies and procedures where required to address areas

identified (in conjunction with Project Vote) as potentially at risk of violating the requirements of Section 8(i) of the NVRA; these modifications will include, but are not limited to, maintaining and not deleting for at least two years all NVRA-covered information, including but not limited to any and all electronic information created regarding applicants who submit applications to register to vote in Maricopa County and are not subsequently added to the official list of eligible voters (for the avoidance of doubt, including but not limited to any applicants placed on suspense status).

12.   <u>Jurisdiction</u>.  The Parties agree that this Agreement concerns the NVRA, specifically governing the substance of a government official's obligations under the NVRA, and is therefore governed by the laws of the United States.  Any disagreement between the Parties with respect to the terms of this Agreement therefore concerns the NVRA.  Accordingly, the exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the District of Arizona ("Court").  For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.  In the event of a further dispute, the attorney's fees provision, Paragraph 9, will not apply, and therefore Project Vote may seek recovery of such fees, including in a subsequent or derivative action to determine the meaning or application of this Agreement.

13.   <u>System Changes</u>.  The Recorder's Office will inform Project Vote of any proposed changes to its Database and provide a full explanation of any proposed change. In the event of a change, the Recorder's Office will provide information and documents at least as comprehensive as those set forth in this Agreement.  The Recorder's Office

will discuss the implementation of any new database with Project Vote prior to launch in order to ensure continuity of access to the information and documents described in this Agreement.

14. <u>Removal from Litigation</u>:  Upon Project Vote's receipt of the information described in Paragraphs 1–6, the Parties shall promptly dismiss the Civil Action *as to the Recorder's Office* pursuant to Federal Rule of Civil Procedure 41 or such other procedure as the Parties may deem appropriate to effectuate the removal of the Recorder's Office as a party to the Civil Action.  If necessary, in the event that the other Defendants oppose these efforts, the Parties will seek to file a Motion to Dismiss the Complaint *as to the Recorder's Office*.

15. <u>Successors and Assigns</u>.  This Agreement will be binding upon and inure to the benefit of the Parties and their respective heirs, representatives, successors, and assigns.  The Maricopa County Recorder's Office will continue to be bound by all terms of this Agreement during the term of this Agreement, without regard to the individual holding the office of the Recorder.

16. This Agreement is solely intended to be for the benefit of the Parties, their successors, and assigns.  The Parties do not release any claims against any other person or entity.  Each party and signatory to this Agreement represents that it freely and voluntarily enters in to this Agreement without any degree of duress or compulsion.

17. This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

18.    The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

19.    This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

20.    The Recorder's Office consents to Project Vote's disclosure of this Agreement, and information about this Agreement, to the public.

21.    <u>Term</u>.  This Agreement shall bind the Parties for a term of eight years following the date that this Agreement takes effect.

22.    <u>Severability</u>.  If any term of this Agreement is to any extent invalid, for any reason including illegality or conflict with applicable law or regulation, or is otherwise unenforceable, such particular term shall be excluded to the extent of such invalidity or unenforceability; all other terms hereof shall remain in full force and effect; and, to the extent permitted and possible, the invalid or unenforceable term shall be deemed replaced by a term that is valid and enforceable and that comes closest to expressing the intention of such invalid or unenforceable term.

23.    This Agreement is effective on the date of signature of the last signatory to the Agreement.  Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

****** SIGNATURE PAGES TO FOLLOW ******

PROJECT VOTE, INC.

DATED: _3-14-2017_    BY: _Michael Slater/_
                          [ Michael Slater ]
                              President

DATED: _____    BY: _____
                        [                    ]

DATED: _____    BY: _____
                        [                    ]

11

MARICOPA COUNTY RECORDER'S OFFICE


DATED: 3/14/17          BY: _____
                             [                      ]


DATED: 3/14/17          BY: _____
                             [ Deputy County Attorney
                             Maricopa County Attorney's Office


DATED: _____        BY: _____
                             [                      ]


DATED: _____        BY: _____
                             [                      ]

12