## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into by Project Vote, Inc. ("Project Vote") and the Arizona Secretary of State, Michele Reagan (the "Secretary") (collectively, the "Parties"), through their authorized representatives.

## RECITALS

A.  Project Vote is a national, non-partisan voting rights advocacy organization that seeks to ensure that every eligible citizen can register, vote, and cast a ballot that counts.

B.  The Secretary is "[t]he chief state election officer who is responsible for coordination of state responsibilities under the national voter registration act of 1993[.]" A.R.S. § 16-142(A)(1). She is charged by Arizona law with "develop[ing] and administer[ing] a statewide database of voter registration information that contains the name and registration information of every registered voter in [Arizona]." A.R.S. § 16-168(J).

C.  On April 27, 2016, Project Vote filed a complaint in U.S. District Court for the District of Arizona against Michele Reagan, in her official capacity as the Arizona Secretary of State; Helen Purcell, in her official capacity as County Recorder of Maricopa County; and F. Ann Rodriguez, in her official capacity as County Recorder of Pima County. The complaint asserted that A.R.S. § 16-168(E), which provided the fees that requestors were required to pay to obtain voter registration data, violated Section 8 of the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. §§ 20507(i), and the

1

Fourteenth Amendment to the United States Constitution. The complaint asked the Court to enjoin A.R.S. § 16-168(E) and declare it unlawful.

D. The complaint was captioned as *Project Vote v. Reagan, et al.*, Case No. CV-16-01253-DLRPHX (D. Ariz.), hereinafter the "Civil Action."

E. On March 30, 2017, Project Vote and the Maricopa County Recorder entered into a settlement agreement that resolved their differences in the Civil Action. A copy of that settlement agreement was filed with the Court as Docket No. 75-1.

F. This Agreement between Project Vote and the Secretary pertains solely to those two Parties to settle the Civil Action, and does not resolve or otherwise affect any claim Project Vote may have against any other current or former party to the Civil Action.

G. To settle and resolve the claims between Project Vote and the Secretary in the Civil Action, and in consideration of the mutual promises and obligations of this Agreement, the Parties agree and covenant as follows:

## DEFINITIONS

1. "Database" means the electronic storage system that contains state-wide voter registration information that Arizona state law requires the Secretary to develop and administer. *See* A.R.S. § 16-168(J).

2. "Applicant" means any individual who has submitted an application to register to vote in the state of Arizona.

3.      "Electronic Data" means information that (1) concerns the currency, accuracy, or both of the official lists of eligible voters and (2) is contained in the Database.

4.      "Identifying Information" means: To the extent the information is accessible to the Secretary,

      a.      The information enumerated in A.R.S. § 16-168(C) that is provided to the political party chairpersons, which includes: (1) name in full and appropriate title; (2) party preference; (3) date of registration; (4) residence address; (5) mailing address, if different from residence address; (6) zip code; (7) telephone number if given; (8) birth year; (9) occupation if given; (10) voting history for all elections in the prior four years that the Secretary maintains electronically; and (11) all data relating to permanent early voters and nonpermanent early voters, including ballot requests and ballot returns.

      b.      The voter or Applicant's state-assigned Voter ID number.

      c.      The voter or Applicant's county of residence and precinct information, to the extent that information is accessible to the Secretary.

      d.      The voter or Applicant's race or ethnicity if provided.[1]

      e.      Whether the voter needs assistance with voting if provided.

      f.      The voter or Applicant's status (i.e., active, inactive, federal only, rejected, etc.).

---

[1] Currently, neither Arizona's counties nor the State collects this information from Applicants.

5.  "Field" means any category of information used to characterize an individual Record in the Database.

6.  "Code" means the "reason code" that explains why a voter has a particular status, as well as any additional codes necessary to understand the information provided in response to the public records request.

7.  "Record" means information associated with a single voter or Applicant contained in the Database. The scope of the Records responsive to a request shall be determined by the date range specified on a request.

8.  "Secretary" means the Arizona Secretary of State and her office.

**TERMS AND CONDITIONS**

1.  Voter Registration Records. Subject to the exceptions provided in Paragraphs 5 and 8, and to the extent the information is accessible to the Secretary, the Secretary will, upon request, make available to the public all current voter registration Records subject to the NVRA. The minimal records responsive to such a request are outlined below. The Secretary may assess reasonable costs consistent with the NVRA and Paragraph 7 of this Agreement.

2.  Information to Be Provided. Subject to the exceptions provided in Paragraphs 5 and 8, and to the extent information is accessible to the Secretary, the information that the Secretary will provide to the public upon specific request includes:

    a.  All NVRA-covered Electronic Data maintained by the Secretary.

    b.  All Identifying Information, as defined above, maintained by the Secretary.

    c. The full history maintained by the Secretary for any application Record, including applications that did not result in adding the Applicant to the voter rolls as eligible to vote in all elections in the voter's jurisdiction, that fall within the time parameters set by the requester. The history will include all key dates in the applicable County Recorder's Office's handling of these applications, including the date of creation or entry, the date and nature of any status changes and the reason for such change, and where appropriate the reason the Applicant was not added to the voter rolls for voting in all elections in the voter's jurisdiction, to the extent the Secretary has such information. This history will be provided in electronic format.

    d. All information maintained by the Secretary in the Database relating to the status of all Applicants or voters including those whose current status is anything other than currently permitted to vote in all elections in the jurisdiction. This will include rejection, cancellation, or suspension of any application or the removal of any former voter from the voter rolls. The information will also include the method of application (e.g., electronic, paper state form, or paper federal form), the basis for such status, to the extent not already covered above, and if not reasonably apparent from the record provided, a supplemental explanation of this disposition, to the extent such explanation is available to the Secretary. The information will also include the reason code, which could explain why the applicant or voter was rejected, cancelled, suspended, or otherwise declared ineligible to vote.

    e. Information regarding the method a voter uses to vote, including the

handling and current status of requests to vote by early ballot, and the current status of those ballots (e.g., accepted for tabulation, rejected, etc.).

    f. The policies and procedures relating to the Database and the maintenance of the voter rolls that is necessary to understand the information that the Secretary provides in response to a request, as well as any policies and procedures related to communication with voters or Applicants. Depending on the information provided, this may include material related to an explanation of the Database, of its function, of any fields, codes, tables and/or interactions with other databases for which the label used or information provided is not reasonably sufficient to determine its meaning and use. If structural details of third-party proprietary software must be disclosed to the requestor for the Secretary to provide complete materials related to an explanation of the Database, at the Secretary's sole discretion, the requestor may have to enter into a non-disclosure agreement to receive structural details of third-party proprietary software, provided that the underlying data will not be subject to a non-disclosure agreement. In addition, if the requestor wishes to share the information covered by a non-disclosure agreement with another person or entity, the requestor may share with the receiving person or entity if that receiving person or entity agrees in writing to be bound by the terms of the non-disclosure agreement. Prior to or contemporaneously with providing the other person or entity information subject to a non-disclosure agreement, the requestor must provide the Secretary with a copy of the written instrument that binds that other person or entity to the terms of the non-disclosure agreement.

      g.    To the extent not included in information provided pursuant to the above paragraphs, the Secretary will provide to the public upon request any information it provides to the counties related to use of the Interstate Crosscheck Program.

      h.    Any materials under Paragraph 2 of this Agreement or information not available electronically may be produced in accordance with reasonable terms as agreed to by the requestor and the Secretary.

    3.    <u>Format of the Information to Be Provided</u>.  The Secretary will provide the materials and information identified in Paragraph 2 using the format in which the records are currently stored or the closest feasible approximation that is readable by the requestor, as agreed to by the Secretary and the requestor, with the exception of materials referenced in Paragraph 2(h), which may be produced in accordance with the provisions of that Paragraph.

    4.    <u>Voter and Status History</u>.  The Secretary will provide the requestor with an electronic copy of the voting and registration status history for any voter registered at any time, including any voter later moved to an ineligible status or removed from the voter rolls.

    5.    <u>Confidential Information</u>.  Certain information will be treated as confidential, and will not be disclosed, under A.R.S. §§ 16-153 and -168(F), and 41-161, as follows:

      a.    For a Record subject to protection under A.R.S. § 16-153, the Secretary shall redact that Record in its entirety before providing it to Project Vote or a member of the public.

  b. For a Record subject to protection under A.R.S. § 16-168(F), the Secretary agrees that Project Vote is acting "for election purposes." Any information provided to Project Vote may be subject to commercially reasonable data protection measures or redaction as agreed to by the parties.

  c. For a Record subject to protection under A.R.S. § 41-161, et seq., the Secretary shall redact that Record in its entirety before providing it to Project Vote or any member of the public.

  6. <u>Political Activity Usage of the Information</u>. Project Vote asserts that it intends to use any Arizona voter registration information it receives to further its efforts to ensure that every eligible citizen can register, vote, and cast a ballot. The Secretary agrees that this use is not commercial, but relates to a political activity pursuant to A.R.S. § 16-168(E).

  7. <u>Fees for Production of the Information</u>. Any fees charged by the Secretary for the production of information pursuant to this Agreement shall be consistent with the NVRA's reasonable fee requirements. Plaintiff agrees for the purposes of this settlement that the following fee structure, provided in A.R.S. § 16-168(E), may be applied to the production of information by the Secretary pursuant to this Agreement, consistent with the reasonable fees requirements of the NVRA:

  a. For one to one hundred twenty-four thousand nine hundred ninety-nine records, ninety-three dollars seventy-five cents plus $0.0005 per record.

b.   For one hundred twenty-five thousand to two hundred forty-nine thousand nine hundred ninety-nine records, one hundred fifty-six dollars twenty-five cents plus $0.000375 per record.

c.   For two hundred fifty thousand to four hundred ninety-nine thousand nine hundred ninety-nine records, two hundred three dollars thirteen cents plus $0.00025 per record.

d.   For five hundred thousand to nine hundred ninety-nine thousand nine hundred ninety-nine records, two hundred sixty-five dollars sixty-three cents plus $0.000125 per record.

e.   For one million or more records, three hundred twenty-eight dollars thirteen cents plus $0.0000625 per record.

f.   The cost of storage media, if any, required to transfer the data.

8.   <u>The Secretary's Obligation to Fill Requests</u>.  The Secretary is obligated to fill any such requests that she receives to the extent she possesses the information, and may not delegate a proper request to other political subdivisions. Notwithstanding any other provision in this Agreement, anyone making a request to the Secretary must make it with specificity to allow the Secretary to understand the information requested. If the Secretary cannot ascertain the information requested, the Secretary will work with the requester to determine the information requested and additional specificity needed to allow the Secretary to fill the request.

9.   <u>Attorneys' Fees and Costs</u>.  In the interest of settlement and subject to the full and complete cooperation agreed to by the Secretary, Project Vote agrees not to

pursue attorneys' fees or litigation costs against the Secretary. Each of the Parties will bear their own attorneys' fees and costs with respect to the claims against the Secretary.

10.  Commitment to Public Disclosure Provision Compliance. The Secretary agrees to comply with Section 8(i) of the NVRA. This includes taking reasonable measures to ensure that local elections officials are providing the Secretary the information necessary for the Secretary to fully comply with this section of the NVRA.

11.  Jurisdiction. The Parties agree that this Agreement concerns the NVRA and is therefore governed by the laws of the United States as well as the laws of Arizona. The Parties further agree that the exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the District of Arizona (the "Court"). For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute. In the event of a further dispute, the attorneys' fees provision, Paragraph 10, will not apply, and therefore either Party may seek recovery of such fees if it is the prevailing party, including in a subsequent or derivative action to determine the meaning or application of this Agreement.

12.  Dismissal of the Civil Action. The Parties shall work together to dismiss the Civil Action as to the Secretary with prejudice pursuant to Federal Rule of Civil Procedure 41 or such other procedure as the Parties my deem appropriate.

13.  Successors and Assigns. This Agreement will be binding upon and inure to the benefit of the Parties and their respective heirs, representatives, successors, and

assigns. The Secretary will continue to be bound by all terms of this Agreement during the term of this Agreement, without regard to the individual holding the office of Arizona Secretary of State.

14. Intended Beneficiaries of the Agreement. This Agreement is solely intended to be for the benefit of the Parties, their successors, and assigns. The Parties do not release any claims against any other person or entity. Each party and signatory to this Agreement represents that it freely and voluntarily enters in to this Agreement without any degree of duress or compulsion.

15. Complete Agreement. This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

16. Authority to Execute Agreement. The undersigned represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

17. Counterpart Execution. This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

18. Disclosure. Both Parties consent to the other's disclosure of this Agreement, and information about this Agreement, to the public.

19. Term. This Agreement shall bind the Parties for a term of eight years following the date that this Agreement takes effect.

20. <u>Severability</u>. If any terms of this Agreement is to any extent invalid for any reason, including illegality or conflict with applicable law or regulation, or is otherwise unenforceable, then: such particular term shall be excluded to the extent of such invalidity or unenforceability; all other terms of the Agreement shall remain in full force and effect; and, to the extent permitted and possible, the invalid or unenforceable term shall be deemed replaced by a term that is valid and enforceable and that comes closest to expressing the intention of such invalid or unenforceable term.

21. <u>Effective Date</u>. This Agreement is effective on the date of signature of the last signatory to the Agreement, and supersedes all prior versions of this Agreement. Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

****** SIGNATURE PAGES TO FOLLOW ******

PROJECT VOTE, INC

Dated: 6/9/2017

By: _____
Michelle Kanter Cohen
Consulting Attorney
Project Vote, Inc.

Dated: 6/9/2017

By: _____
Allison Kierman
Kierman Law
Counsel for Plaintiff

## ARIZONA SECRETARY OF STATE

Dated: 6-22-17                By: _____
                                  Michele Reagan
                                  Arizona Secretary of State

Dated: 6/23/2017              By: _____
                                  Kara Karlson
                                  Arizona Attorney General's Office
                                  Counsel for the Secretary

No. 5888257-v7